## S99G1519. CARTHERN v. THE STATE.
### (529 SE2d 617)

FLETCHER, Presiding Justice.

A jury convicted Taylor Christopher Carthern of criminal damage to property in the first degree for shooting a gun into the house of a neighbor.[1] The Court of Appeals of Georgia affirmed.[2] The issue on appeal is whether the act of firing a gun into a residence when no one is physically present interferes with property "in a manner so as to endanger human life." Construing the phrase "endanger human life" to mean reckless endangerment of another, we hold that a person who fires gunshots into an inhabited dwelling where people are likely to be present endangers human life within the meaning of the statute. Therefore, we affirm.

---

[1] See OCGA § 16-7-22 (a) (1) (1999).
[2] *Carthern v. State*, 238 Ga. App. 670 (519 SE2d 490) (1999).

The evidence at trial shows that Carthern fired a nine-millimeter semi-automatic handgun as he walked down his street at four o'clock one morning. The sound of repeated gunfire woke up a resident who opened his garage door to find Carthern standing in front of him with the pistol in his hand. This resident watched Carthern as he went next door to the home of Steve Watts, shot at the back glass door, walked through the door, and fired another shot from inside the house. Although the Watts' family was on vacation, there is no evidence that Carthern knew that no one was at home when he shot into the house. A jury found Carthern guilty of five crimes, including criminal damage to property in the first degree. He was sentenced to five years probation and a $1,500 fine for that crime and a total of eight years imprisonment, seven years probation, and a $3,000 fine for all five charges.

## Criminal Damage to Property Statute

The criminal code divides criminal damage to property into two separate crimes. A person commits criminal damage to property in the first degree when he or she "(1) Knowingly and without authority interferes with any property in a manner so as to endanger human life; or (2) Knowingly and without authority and by force or violence interferes with the operation of any system of public communication, public transportation, . . . or . . . public utility service."[3] A person commits criminal damage to property in the second degree when he or she intentionally damages any property of another person without consent and the damage exceeds $500; recklessly or intentionally damages the property of another person by fire or explosive; or starts a fire on the land of another with intent to damage and without consent.[4] Conviction of the first degree offense is punishable by one to ten years in prison; conviction of the second degree offense is punishable by one to five years imprisonment.

## Legislative History

First enacted in 1968 as part of the Criminal Code of Georgia,[5] the crime of criminal damage to property essentially codifies the common law of malicious mischief.[6] Prior to 1968, there were more than

---

[3] OCGA § 16-7-22 (a).

[4] OCGA § 16-7-23 (a).

[5] See Ga. Code Ann. §§ 26-1501, 26-1502 (1933) (now codified at OCGA §§ 16-7-22, 16-7-23 (1999)).

[6] Robert E. Cleary, Jr., *Kurtz Criminal Offenses and Defenses in Georgia* 687 (4th ed. 1997).

50 code sections that related to criminal damage to property.[7] The code drafters aimed to retain the substance of the former state law, simplify and clarify the language of the statutes, and eliminate duplication. They divided the crime into two degrees because of the disparity in the seriousness of the acts. The primary purpose of first degree criminal damage to property is to protect property in the interest of human life and safety, especially public property. In contrast, the primary purpose of second degree criminal damage to property is to protect private property. "While the language in § 26-1501 (a) [OCGA § 16-7-22] is much broader than any former Georgia law, it seems to be justified on the basis that it covers a host of offenses which could present dangerous problems and which Georgia law did not cover or covered only inadequately."[8]

Like other sections of the criminal code, the provisions on criminal damage to property relied in part on the Model Penal Code.[9] Despite retaining "some vestiges of the old approach to criminal mischief," the state code generally followed the Model Penal Code approach of consolidating various provisions against malicious mischief.[10] In addition, the Georgia drafters adopted some of the Model Penal Code's language in defining the crime of criminal damage to property, including the phrase "so as to endanger" human life. In discussing that phrase, the comments to the Model Penal Code explain that it was intended to cover situations where a person tampers with property of another "in a way that may not itself cause damage but that creates a risk of danger" to persons or property. The phrase "describes an actual risk of danger that must exist, as to which the defendant must at least be reckless. Actual harm need not occur."[11]

## Case Law

There is little case law interpreting the phrase "in a manner so as to endanger human life" in OCGA § 16-7-22 (a). In *Waugh v. State*,[12] this Court concluded that the defendant interfered with property so as to endanger human life when he aided and abetted another in throwing a 40-pound rock from a bridge over an interstate highway into the path of oncoming traffic. We held in that case that criminal damage to property in the first degree could serve as the basis for

---

[7] See Ga. Code Ann. §§ 26-1501 to 26-1509 committee notes on ch. 26-15 (1998).

[8] Id. at 202.

[9] See Ga. Code Ann. tit. 26, bk. 10, pt. 1, p. 3 criminal law study committee foreword (1998).

[10] See Model Penal Code and Commentaries, pt. II, vol. 2 § 220.3 comment 1 (Official Draft and Revised Comments 1980).

[11] Id. at 47-48 comment 5 on tampering with property.

[12] 263 Ga. 692 (437 SE2d 297) (1993).

a felony murder conviction because, unlike a status offense, it was an inherently dangerous or life-threatening felony.[13] In other cases, there has been no question that life was endangered because criminal damage to property in the first degree was the underlying felony in a felony murder conviction[14] or there was evidence that persons were present when shots were fired into a residence.[15]

Unlike our decision in *Waugh*, where we were considering whether OCGA § 16-7-22 could be the underlying felony in a felony murder conviction, we must decide here what constitutes the elements of criminal damage to property in the first degree. Having considered the statutory language and legislative history, we now construe the phrase "in a manner so as to endanger human life" to mean reckless endangerment rather than actual endangerment. We follow the Model Penal Code's formulation that the "actual risk of danger" must exist and the defendant must at least act recklessly. This interpretation is consistent with the purpose of the statute in seeking to protect human life and recognizes the heightened punishment for criminal damage to property when human safety is threatened.

Applying this interpretation to the facts in this case, we conclude there was sufficient evidence for a jury to find that Carthern knowingly and without authority interfered with property in a manner so as to endanger human life. He fired a gun at night into an inhabited dwelling where residents were likely to be present, thus recklessly endangering the life of another. The fact that the occupants of the house were not physically present does not lessen the risk of danger to others or the recklessness of his behavior. Therefore, we affirm the judgment of the court of appeals in upholding his conviction.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 8, 2000.

*Jones, Morrison, Womack & Dearing, William A. Morrison, Paul S. Liston,* for appellant.

---

[13] See *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992) (holding that status felony of possession of a firearm by a convicted felon, which was not inherently dangerous nor life threatening under the circumstances, was not sufficient to be the underlying felony in felony murder conviction).

[14] See, e.g., *Williams v. State*, 263 Ga. 135 (429 SE2d 512) (1993); *Alvin v. State*, 253 Ga. 740 (325 SE2d 143) (1985).

[15] See, e.g., *Carter v. State*, 212 Ga. App. 139 (441 SE2d 100) (1994); *Simmons v. State*, 138 Ga. App. 554 (227 SE2d 70) (1976).

*William T. McBroom III, District Attorney, Randall K. Coggin, Assistant District Attorney*, for appellee.