610 S.E.2d 687 (2005)
271 Ga. App. 738
In the Interest of M.D.L., a child.
No. A04A2353.
Court of Appeals of Georgia.
February 22, 2005.
*688 H. Brannen Bargeron, Louisville, for Appellant.
Steven Askew, District Attorney, John A. Fitzner, III, Assistant District Attorney, for Appellee.
*689 ADAMS, Judge.
Following a bench trial in juvenile court, M.D.L. was adjudicated delinquent. He now appeals.
Construed in favor of the judgment, and excluding inadmissible hearsay, the evidence shows the following: At about 2:30 a.m. on May 9, 2003, Rodney Renfroe was sitting on the porch of a house on Cooper Street in Sandersville, Washington County, talking to three friends when he saw four "gunmen" coming down the street. The men got as close as about 15 feet. Renfroe testified that the men drew their guns on him; he saw a rifle and a pistol. He testified that he was scared and ran inside. Renfroe called the police, who came almost immediately, questioned Renfroe, and left. Renfroe told the police that M.D.L., a person he previously knew, was one of the gunmen, all four of whom he identified for the police. Renfroe also identified M.D.L. in court.
The investigating officer then went to 609 Lime Street, the home of one of the other suspects, and knocked on the door. Someone locked the door but did not answer. On the front porch the officer saw and retrieved two .38 caliber unspent shells.
Meanwhile, at about 4:00 the same morning, shots were fired at a car and at the house located at 604 Temple Drive in Sandersville. Inside the house at the time were Shannon Atkins, Charles Bloodsaw, and Bennie Poole, who was Renfroe's cousin. Renfroe, too, was in or near the house at the time of the shooting; he had gone there after the police questioned him at the Cooper Street house.
No one immediately called the police. Instead, Poole and Renfroe went to Poole's home in the bullet-riddled car and called the police later that morning from that address  810 Martin Luther King Street. The police came to that location. Renfroe told the police that he was asleep in the house when he heard gunshots, and that in response he looked out the window and saw the same four gunmen, including M.D.L. Poole told the police that Renfroe arrived at the house and told him that four guys had pulled a gun on him. At that point he looked out of a window and saw the same four guys start shooting, including M.D.L. The officers photographed the car and processed it for evidence.
Shannon Atkinson, then a resident of 604 Temple Drive, called the police after he woke up in the morning and saw the bullet holes in the house. Officer Smith went to that address and met with Atkinson, Bloodsaw, and a third person. Atkinson told the police that he did not see who fired the shots but that he saw the same four men outside. Bloodsaw told the police that he looked outside after the shooting and saw someone with a Tech 9 machine gun. The officer noted the bullet holes in the house, and he saw that some bullets went into a bedroom, over a bed, and into an interior wall. There were at least four bullet holes in the house. He did not locate any spent cartridges on the site, but he retrieved one bullet from the bedroom wall. That bullet proved to be a .38 caliber Winchester Wind Cling brand bullet. An expert testified that it was fired from an "RG Armenius FIE and Titan .38 Special Revolver." Officers never located that weapon.
Officers obtained a warrant to search 609 Lime Street  the residence of Jeremy Cuyler, one of the four suspected gunmen. Upon executing the warrant, officers recovered .22 caliber ammunition, numerous crack pipes, drug paraphernalia, what appeared to be crack cocaine, holsters, rifles, an Intra-Tech 9mm machine pistol, Winchester Luger 9mm caliber ammunition, and Winchester Wind Cling .38 ammunition  the same kind found in the interior wall at 604 Temple Drive.
Officer Smith arrested M.D.L. several days later. During a pat-down search, officers discovered two Winchester brand.38 caliber steel jacket revolver cartridges in his pocket. These are different from Wind Cling ammunition but the same caliber. M.D.L. made a voluntary statement after having received a Miranda warning, in which he stated that he did not have a .38 caliber weapon, but that he had a Tech 9mm gun that would not fire  the same type of gun found at 609 Lime Street (Cuyler's residence). But M.D.L. also told Officer Smith that he had been at his mother's house in Atlanta on the night of the shooting. Officer Smith talked *690 to his mother who confirmed that information, but Smith also testified that his impression of the mother was that she did not really know where her son was.
M.D.L.'s mother and father testified at trial that their son was in Atlanta that night. His mother admitted that in her telephone call with Officer Smith she was uncertain of her son's location, but not on the night of the shooting, rather, on the day of the telephone call, which was several days after the incident.
Following a bench trial, the juvenile court found that M.D.L. committed the charged offenses of aggravated assault on Renfroe, aggravated assault on Poole, criminal damage in the first degree to Poole's car, possession of a firearm during the commission of aggravated assault on Poole, and possession of a firearm during the commission of criminal damage to property.
1. In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. The standard of review on appeal in a case of a juvenile adjudication is the same as that for any criminal case.
(Citations and punctuation omitted.) In the Interest of M.G., 233 Ga.App. 23, 503 S.E.2d 302 (1998); see also Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
(a) The evidence was sufficient to show that M.D.L. was a party to the crime of aggravated assault on Renfroe when the four men placed him in reasonable apprehension of immediately receiving a violent injury by threatening him with guns at Cooper Street. OCGA §§ 16-5-20; 16-5-21. That M.D.L.'s parents testified that he was in Atlanta at the time created an issue of fact to be resolved by the trial court.
(b) The evidence was sufficient to show that M.D.L. was a party to the crime of aggravated assault on Poole when one or more of the four gunmen shot bullets into the residence of Atkinson. There was evidence that M.D.L. spent time in the neighborhood and that all the young men knew each other. The presence of Poole's car at Atkinson's residence is circumstantial evidence from which the court could conclude that the shooters believed someone was in the house. From that evidence one may conclude that the shooters intended to commit a violent injury to Poole by firing their weapons. OCGA §§ 16-5-20; 16-5-21. See also Culler v. State, 277 Ga. 717, 719-720(4), 594 S.E.2d 631 (2004) (aggravated assault conviction upheld where defendant intentionally fired bullets into an occupied house, regardless of primary target); Veal v. State, 242 Ga.App. 873, 874(1)(a), 531 S.E.2d 422 (2000) (intent to harm some in trailer is transferred to actual victims regardless of whether defendant knew they were present). Also, both Poole and Renfroe gave statements to the police identifying M.D.L. as one of the shooters.
The fact that Poole, Renfroe, Atkinson, and Bloodsaw attempted to recant their identification testimony at trial is irrelevant because their written statements to police provided the necessary evidence, and in Georgia, a prior inconsistent statement of a witness subject to cross-examination is admissible as substantive evidence. Gibbons v. State, 248 Ga. 858, 862-863, 286 S.E.2d 717 (1982). See also Holiday v. State, 272 Ga. 779, 780(2), 534 S.E.2d 411 (2000).
(c) M.D.L. was also adjudicated delinquent for criminal damage to property in the first degree, OCGA § 16-7-22, in that he "unlawfully, knowingly, and without authority interfered with the automobile of Benny Poole, Jr., in a manner so as to endanger human life, to wit: by shooting said automobile...." (Emphasis supplied.) Compare OCGA § 16-7-23 (second degree). "The primary purpose of first degree criminal damage to property is to protect property in the interest of human life and safety, especially public property. In contrast, the primary purpose of second degree criminal damage to property is to protect private property." Carthern v. State, 272 Ga. 378, 380, 529 S.E.2d 617 (2000).
The Supreme Court has construed the phrase "in a manner so as to endanger human *691 life" to mean "reckless endangerment rather than actual endangerment." Id. at 381, 529 S.E.2d 617. Applying that construction, the same Court held that firing a gun into an empty house constitutes reckless endangerment where the facts showed that the building was "an inhabited dwelling where the residents were likely to be present." Id. Here, there is no evidence to suggest that Bennie Poole's car was likely to be occupied at the time of the shooting; no evidence that it is reasonable to conclude that a car parked at 4:00 a.m. at a residence is occupied; and no evidence to show that the car was positioned relative to the gunmen in such a way that bullets could be expected to enter the house. The car was moved before the police arrived and there was no testimony about where the car had been parked at the time of the shooting or how far it was from the house or any other buildings. And it would be pure speculation to say that the same shots that were fired at the car were the ones that struck the house. Without more, it cannot be said that firing a gun at an empty parked car at 4:00 a.m. constitutes criminal damage to property in the first degree, and we reverse M.D.L.'s adjudication on this count. Compare Carthern, 272 Ga. at 381, 529 S.E.2d 617. For the same reason, the defendant's adjudication of possession of a firearm during the commission of this crime must be vacated.
(d) Finally, the evidence was sufficient to show that M.D.L. was in possession of a firearm during the aggravated assault on Poole. Poole told the police that he witnessed M.D.L. as the shooter.
2. M.D.L. contends that his statement to the police regarding a Tech 9 type weapon and the like weapon found at the home of one of the gunmen were irrelevant to the charges and should not have been considered by the court.[1]
An officer testified that M.D.L. said that he wanted to make a statement. Then M.D.L. stated that he did not have a .38 caliber weapon, but that he did have a Tech 9mm gun that would not fire  the same type of gun found at 609 Lime Street (Cuyler's residence). The statement could be construed as an attempt by M.D.L. to distance himself from the actual weapon used to shoot the car and house and an admission that he was present but that his gun did not fire. Furthermore, a gun of the type he admitted having was found at a co-defendant's house and one of the witnesses told police that he saw one of the gunmen holding a gun of that type. The evidence was relevant.
3. M.D.L. also contends that the trial court did not make appropriate factual findings necessary to confine him to restrictive custody under OCGA § 15-11-63(c).
OCGA § 15-11-63(b) requires that when a juvenile is found to have committed a designated felony act, the order of disposition must include a finding based upon a preponderance of the evidence as to whether the juvenile requires restrictive custody. OCGA § 15-11-63(c) provides that the court shall consider five relevant circumstances: the needs and best interest of the juvenile; his record and background; the nature and circumstances of the offense; the need for protection of the community; and the age and physical condition of the victim. M.D.L. contends that the trial court failed to make a finding on the last of the five elements.
Under this statute, the court must make specific written findings of fact regarding each factor. OCGA § 15-11-63(b); In Interest of C.T., 197 Ga.App. 300, 302(3), 398 S.E.2d 286 (1990). "These findings not only provide a meaningful legal road map for the lower court in exercising discretion in effecting a fundamentally fair case disposition, but also `assist the appellate court in its review of the merits of an appeal.' [Cit.]" Id. at 303(3), 398 S.E.2d 286.
In this case, there are no such findings and we remand the case to the juvenile court for proper findings. See In re S.P., 240 Ga.App. 827, 829(2), 525 S.E.2d 403 (1999).
Judgment affirmed in part, reversed in part, and remanded with direction.
RUFFIN, C.J., and BERNES, J., concur.
NOTES
[1] M.D.L. does not challenge the admissibility of his statement under Miranda.