## A11A0162. CRAFT v. THE STATE.
### (710 SE2d 891)

PHIPPS, Presiding Judge.

In connection with a shooting at an apartment complex, Eldreco Craft was convicted of aggravated assault, disorderly conduct, possession of a firearm by a convicted felon, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony. He argues on appeal that the state violated *Batson v. Kentucky*[1] during jury selection; the evidence was insufficient to support his aggravated assault conviction; a count of the indictment was defective; the judge improperly expressed an opinion during trial; the court improperly charged the jury; and he received ineffective assistance of counsel. Craft has shown that the court committed reversible error when it charged the jury on possession of a firearm during the commission of a felony, and thus we reverse Craft's conviction for that offense; because the evidence was sufficient to

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

support that conviction, however, Craft may be retried.[2] There is no merit in Craft's remaining contentions, and accordingly we affirm his other convictions.

1. Craft argues that the trial court erred in denying his *Batson* challenge to one of the state's peremptory jury strikes.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.[3]

The findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous.[4]

The court found that Craft had made a prima facie showing of racial discrimination because the state used six of eight peremptory strikes against prospective jurors who were members of racial minority groups. After the state offered explanations for the strikes, the court reinstated one juror (the alternate) but allowed the other five strikes to stand, ruling that the state's proffered explanations for those five strikes were race-neutral and that Craft had failed to show discriminatory intent.

Craft challenges the court's ruling regarding one of the five permitted strikes. The state's explanation for striking the prospective juror was that he had been "slumped down in his chair" during voir dire and "seemed disinterested in what was going on." This was a race-neutral explanation for exercising the strike.[5]

Craft questions whether the prospective juror was in fact disinterested and notes that the court failed to make a specific finding on this point. But the court was not required to make a finding on the juror's actual disinterest; it was required to determine, considering the totality of the circumstances, whether Craft had shown that the state was motivated by discriminatory intent in

---

[2] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

[3] *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005) (citation omitted).

[4] *Jackson v. State*, 265 Ga. 897, 900 (2) (463 SE2d 699) (1995).

[5] See *Arrington v. State*, 286 Ga. 335, 340 (9) (687 SE2d 438) (2009) (strike based on prospective juror's demeanor can be race-neutral); *Rakestrau v. State*, 278 Ga. 872, 875 (3) (c) (608 SE2d 216) (2005) (inattentiveness during voir dire has been upheld as a valid race-neutral reason for striking potential jurors). See generally *Jackson*, supra at 898 (unless discriminatory intent is inherent in proponent's explanation, reason offered will be deemed race-neutral).

the exercise of the strike.[6] Under the circumstances, we cannot conclude that the court's *Batson* ruling was clearly erroneous.[7] There was not, for example, a showing that "similarly situated jurors of another race were not struck or that the [state's] race-neutral reason for [the] strike [was] so implausible or fantastic that it render[ed] the explanation pretextual."[8] Nor was there any other ground shown that required a finding that the prosecutor had a discriminatory intent. That the court reinstated another juror, against whom the state used a peremptory strike for a different reason,[9] does not demand a different result.[10] *George v. State*,[11] cited by Craft, is inapposite; in that case, the record did not support the state's proffered explanations for several peremptory strikes.[12]

The trial court was authorized to find that Craft failed to carry his burden of showing purposeful discrimination.[13] Consequently, the court did not clearly err in denying Craft's *Batson* motion.[14]

2. Craft was charged with aggravated assault against a specific resident of the apartment complex, into whose apartment a bullet had passed during the shooting. He argues that there was insufficient evidence to support his conviction for this offense. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[15]

So viewed, the evidence showed that on March 19, 2008, Craft, while standing outside an apartment complex amid a group of people, waved a gun in the air and then intentionally fired it several times toward an apartment building. A bullet entered an apartment through a window, passed through the living room, and lodged in a closet door. The apartment's resident and her children were in the living room at the time. The resident testified that she heard the sounds of bullets and breaking glass, that she and her children were on the floor of her apartment when the bullet came through the window, that she was "paranoid," that she remained on the floor of

---

[6] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998); see *Flanders*, supra.

[7] See *Barnes*, supra at 350-351 (6).

[8] Id. (punctuation and footnote omitted).

[9] The prosecutor explained that he had struck the reinstated juror because of the emphasis she had placed on her church attendance.

[10] See *Kimble v. State*, 301 Ga. App. 237, 247 (6) (687 SE2d 242) (2009).

[11] 263 Ga. App. 541 (588 SE2d 312) (2003).

[12] Id. at 544-548 (2) (a)-(d).

[13] See *Flanders*, supra.

[14] Id.

[15] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

her apartment for about ten minutes afterward, and that she crawled to her telephone to call for help and crawled to her door when assistance arrived.

A person commits an aggravated assault, among other ways, by assaulting another with a deadly weapon.[16] A person commits an assault by, among other things, committing an act which places another in reasonable apprehension of immediately receiving a violent injury.[17] The jury was authorized to find from the evidence that Craft intentionally committed an act that placed the apartment resident in reasonable apprehension of immediately receiving a violent injury.[18] The evidence thus was sufficient to support his conviction for aggravated assault.[19]

3. The indictment charged Craft with possessing a firearm during the commission of the felony of criminal damage to property in the first degree. Craft argues that this count was defective because the felony alleged in the count could not serve as a predicate for the possession offense. He raised this argument to the trial court at the close of the state's case through a motion for directed verdict of acquittal on the charge of possession of a firearm during the commission of a felony. But a "motion for directed verdict of acquittal addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment."[20] Because Craft moved for a directed verdict of acquittal, the issue presented for appellate review is the propriety of the court's denial of that motion, which issue "is determined, not by the sufficiency of the indictment, but by whether the evidence adduced at trial demanded a verdict of 'not guilty,' under the standard of *Jackson v. Virginia*."[21]

---

[16] OCGA § 16-5-21 (a) (2).

[17] OCGA § 16-5-20 (a). See generally *Brinson v. State*, 272 Ga. 345, 347 (1) (529 SE2d 129) (2000) (central to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20 be committed on the victim).

[18] See *Smith v. State*, 280 Ga. 490, 492 (1) (629 SE2d 816) (2006) (in aggravated assault case involving deadly weapon, all that is required is that assailant intend to commit act which in fact places another in reasonable apprehension of violent injury, not that assailant specifically intend to cause such apprehension); *Thompson v. State*, 277 Ga. App. 323, 324 (1) (626 SE2d 825) (2006) (evidence that defendant intentionally fired shots in direction of another person, who was frightened, was sufficient to support conviction for aggravated assault, despite defendant's claim that he fired shots to quell a disturbance, not to injure victim); *Maynor v. State*, 257 Ga. App. 151, 155 (570 SE2d 428) (2002) (evidence that victims heard gunshots outside their house, realized that shots had hit the house, and were afraid that the person might continue shooting at the house, was sufficient to show the reasonable apprehension required for an assault conviction).

[19] *Thompson*, supra.

[20] *Adkins v. State*, 279 Ga. 424, 426 (2) (614 SE2d 67) (2005) (citation and punctuation omitted).

[21] Id. (citations and punctuation omitted); see *Williams v. State*, 237 Ga. App. 814 (1) (515 SE2d 875) (1999).

OCGA § 16-11-106 provides, in pertinent part, that a person commits a felony by having on or within arm's reach of his or her person a firearm during the commission of certain enumerated felonies.[22] The indictment alleged that Craft violated OCGA § 16-11-106 by possessing a firearm while committing criminal damage to property in the first degree. Although the Code section does not specifically list criminal damage to property in the first degree as a predicate felony, it more generally enumerates as a predicate offense any crime which is a felony "against or involving the person of another."[23]

A person commits the offense of criminal damage to property in the first degree when he or she, among other things, "[k]nowingly and without authority interferes with any property in a manner *so as to endanger human life*."[24] This statutory language contemplates that the defendant's actions create an actual risk of danger to a person.[25] Accordingly, the offense of criminal damage to property in the first degree "involves" a person, and thus may serve as a predicate for a conviction for possession of a firearm during the commission of a felony under OCGA § 16-11-106 (b) (1).[26] And the requirements of *Jackson v. Virginia* were met as to this conviction, because the evidence authorized the jury to find that Craft, while possessing a firearm, knowingly and without authority interfered with property in a manner endangering human life, by shooting at an inhabited apartment building.[27]

4. Craft contends that the judge violated OCGA § 17-8-57, which provides: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." He does not claim that any specific statement made by the judge before the jury violated this Code section, but he asserts that

---

[22] OCGA § 16-11-106 (b).

[23] OCGA § 16-11-106 (b) (1).

[24] OCGA § 16-7-22 (a) (1) (emphasis supplied).

[25] See *Carthern v. State*, 272 Ga. 378, 380-381 (529 SE2d 617) (2000) (criminal damage to property in the first degree is "an inherently dangerous or life-threatening felony"); *Carter v. State*, 212 Ga. App. 139 (441 SE2d 100) (1994) (describing criminal damage to property in the first degree as an offense, not against property ownership, but rather against the state involving an act that endangers human life).

[26] Compare OCGA § 16-7-23 (a) (setting forth elements of criminal damage to property in the second degree, which do not include showing a risk to a person); *Johnson v. State*, 302 Ga. App. 318, 320-321 (1) (b) (690 SE2d 683) (2010) (criminal damage to property in the second degree is not a predicate felony supporting a violation of OCGA § 16-11-106). See generally *Carthern*, supra at 379 (explaining that criminal damage to property in the first degree and criminal damage to property in the second degree are two separate crimes).

[27] See *Carthern*, supra at 381 (evidence that defendant fired gun into inhabited dwelling was sufficient for jury to find that he committed the offense of criminal damage to property in the first degree).

throughout the trial the judge advised and assisted the state in various ways, including questioning witnesses and helping the state lay evidentiary foundations. Craft argues that, "[w]hen a trial court so blatantly helps the State admit inculpatory evidence through its own questioning of witnesses, and advice to the prosecutor, it not only intimates, but expresses an opinion that it supports the State's theory that the accused is guilty."

Although the record shows that the judge asked numerous questions of witnesses during trial,

> [i]t has long been a part of Georgia jurisprudence that a trial judge may propound questions to any witness for the purpose of developing fully the truth of the case, and the extent of such an examination is a matter for the trial court's discretion. The trial court's examination of a witness called by either side is not cause for a new trial unless the court, during its examination of the witness, expresses or intimates an opinion on the facts of the case or as to what has or has not been proved, or the questioning becomes argumentative.[28]

We discern no violation of OCGA § 17-8-57. The actions cited by Craft that occurred in the jury's presence do not constitute statements of the judge's opinion on matters specified in OCGA § 17-8-57, nor argumentative questioning by the judge.[29] In addition, the actions cited by Craft do not reflect an "[e]xtreme anxiety" on the part of the judge "to develop the truth as to facts which, if proved, will be peculiarly beneficial to one of the parties in the case and correspondingly detrimental to the other," from which the jury could infer the court's opinion.[30] Rather, the record shows that the judge questioned witnesses called by both Craft and the state about facts that could be considered both beneficial and detrimental to each side's case.

5. Craft argues that the court erred in instructing the jury that

---

[28] *Mullins v. State*, 269 Ga. 157, 158-159 (3) (496 SE2d 252) (1998) (citations omitted); see *Ashley v. State*, 263 Ga. 820, 822 (3) (a) (439 SE2d 914) (1994) (trial court has right to develop fully the truth of a case, which it may do by examining witnesses called by the parties or by calling its own witnesses).

[29] Craft also cites actions that occurred *outside* the jury's presence; because these actions did not occur in the jury's presence they could not have violated OCGA § 17-8-57. See *Linson v. State*, 287 Ga. 881, 883-884 (2) (700 SE2d 394) (2010).

[30] *Paul v. State*, 272 Ga. 845, 848 (1) (537 SE2d 58) (2000) (citation and punctuation omitted) (noting that a judge's display of "extreme anxiety" could be interpreted by the jury as an expression of its opinion on the issues to be decided in the case), overruled in part on other grounds by *Ledford v. State*, 289 Ga. 70, 84 (14) (709 SE2d 239) (2011).

it could find him guilty of possessing a firearm during the commission of a felony in a manner not alleged in the indictment. We agree.

The indictment alleged that Craft committed the offense by possessing a firearm while committing criminal damage to property in the first degree. In its charge to the jury, the court stated that a person commits the offense of possessing a firearm during the commission of a felony "when the person has on or within arm's reach of his person a firearm during the commission of any or any attempt to commit a felony, which is any crime against or involving the person of another." As discussed above, criminal damage to property in the first degree is a felony that is a crime against or involving the person of another.[31] Evidence was presented that Craft possessed a firearm during the commission of criminal damage to property in the first degree. However, evidence also was presented that Craft possessed a firearm during the commission of another felony that was a crime against or involving the person of another — aggravated assault.

We considered a similar circumstance in *Milner v. State*.[32] The indictment in that case charged the defendant with committing the offense of terroristic threats by threatening to murder the victim, but the court charged the jury that a person committed the offense by threatening to commit *any* violence to the victim.[33] Evidence was presented that the defendant had threatened both to murder the victim and to commit other acts of violence against her.[34] And the court in *Milner* neither gave a limiting instruction to ensure that the jury could find the defendant guilty of the offense only in the specific manner charged in the indictment, nor instructed the jury not to consider the offense as having occurred in another manner.[35] We held in *Milner* that, under those circumstances, "without a remedial instruction, it [was] probable that the jury found [the defendant] guilty of committing the [offense] in a manner not charged in the indictment."[36] Consequently, we found that the defendant's due process rights were violated and we reversed his conviction on that offense.[37]

The circumstances requiring reversal in *Milner* are also present

---

[31] See Division 3, supra.

[32] 297 Ga. App. 859 (678 SE2d 563) (2009).

[33] Id. at 860 (1).

[34] Id.

[35] Id.

[36] Id. See generally *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556) (1995) (conviction is defective if there is a "reasonable possibility" that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment).

[37] *Milner*, supra at 861 (1).

in this case. The possession offense was defined by the court as predicated on *any* felony against or involving the person of another, evidence was presented that Craft committed another such felony, and the court did not instruct the jury to limit its consideration only to the predicate felony specified in the indictment.[38] Thus, we find that under these circumstances there was a reasonable possibility that the jury found Craft guilty of committing the offense in a manner not charged in the indictment, and that Craft's right to due process accordingly was violated.[39] "This error is sufficiently egregious to preclude a finding that it was waived," even though Craft did not object to the charge at trial.[40] For this reason, we reverse Craft's conviction for possession of a firearm during the commission of a felony.[41]

6. Craft's trial was bifurcated; after the jury found him guilty of several of the charges, evidence was presented on the offense of possession of a firearm by a convicted felon, and the jury heard argument from counsel and was charged by the court on that offense. Craft argues that the court erred when it responded to a juror's question regarding the court's charge to the jury on that offense.

The court had instructed the jury that "felony" meant "any offense punishable by imprisonment for a term of one year." Shortly before that instruction, during closing argument, Craft's attorney had asserted that Craft had received probation, rather than prison time, for a prior conviction. After the court charged the jury, a juror stated: "Punishable. Which means any offense punishable by imprisonment for one year. Would that mean that the sentence —" A conference then occurred outside the jury's hearing, at which the court stated: "I don't think you did it intentionally, but you misstated the law. It does not say they have to go to jail. The punishment has to be for at least a year, and the punishment could be probation or jail." The court then instructed the jury that an offense "punishable" by imprisonment for 12 months or more was a felony, even if the person convicted of such offense received a probated sentence.

---

[38] See id. at 860; see also *Dukes*, supra.

[39] See *Dukes*, supra at 422-424 (discussing application of due process analysis where trial court's jury charge differs from indictment); *Milner*, supra at 860-861; *Levin v. State*, 222 Ga. App. 123, 127 (6) (473 SE2d 582) (1996) (concerning conviction for possession of firearm during commission of felony). Compare *Martin v. State*, 303 Ga. App. 117, 120-121 (3) (692 SE2d 741) (2010) (where state did not introduce evidence that defendant committed crime in any manner other than that specified in indictment, no reasonable possibility existed that jury found defendant committed crime in a manner not alleged in indictment, notwithstanding jury charge defining crime to include both manners).

[40] *Levin*, supra; see also OCGA § 17-8-58 (b) (jury charge may be considered on appeal notwithstanding appellant's failure to object at trial where charge constituted "plain error which affects substantial rights of the parties"); *Milner*, supra at 859 (1), n. 1.

[41] See *Dukes*, supra at 424; *Milner*, supra at 861; *Levin*, supra.

Craft contends that, in giving this additional instruction, the court violated OCGA § 17-8-56, which provides that a superior court judge "shall, when the counsel for either party requests it before argument begins, write out their charges and read them to the jury; and it shall be error to give any other charge or additional charge than that so written and read."[42] But where, as here, a court reporter took down the trial court's charge, the requirements of OCGA § 17-8-56 do not apply.[43]

Furthermore, "[g]enerally, the scope and content of additional jury instructions are left to the sound discretion of the trial court, and the trial court may address only the jury's request on a particular point or [may] give additional instructions."[44] We discern no abuse of discretion in the court's response to the juror's question.[45]

7. Craft claims that he received ineffective assistance of counsel. To prevail, Craft

> must establish, pursuant to *Strickland v. Washington*,[46] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[47]

We need not address both components of the *Strickland* test if the showing on one is insufficient, nor must we address the components in any particular order.[48]

(a) Citing *Shaw v. State*,[49] Craft argues that evidence that he fired a gun into the air, rather than at any particular person, warranted a charge on reckless conduct as a lesser included offense to aggravated assault against the resident in whose apartment the bullet lodged;[50] he contends that his counsel committed professional error in failing to request such a charge. *Shaw* does not support

---

[42] OCGA § 17-8-56 (a).

[43] OCGA § 17-8-56 (c).

[44] *Lawson v. State*, 224 Ga. App. 645, 649 (4) (481 SE2d 856) (1997).

[45] See id.

[46] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[47] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[48] Id.

[49] 238 Ga. App. 757 (519 SE2d 486) (1999).

[50] See OCGA § 16-5-60 (b) (a person commits the offense of reckless conduct when he causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from

Craft's position. Rather, *Shaw* holds that, despite evidence that the defendant fired a gun into the air, "a reckless conduct charge is *not* warranted for an aggravated assault committed by placing another in reasonable apprehension of immediately receiving a violent injury."[51] This is because evidence that a defendant fired a gun into the air, and thereby placed another in reasonable apprehension of immediately receiving a violent injury, demonstrates the intent required for aggravated assault, not the criminal negligence required for reckless conduct.[52] Because the court was not required, under the evidence, to give a charge on reckless conduct,[53] there is no merit in Craft's claim that his trial counsel's failure to request such a charge constituted professional error.[54]

(b) Craft asserts that the evidence warranted a jury charge on criminal trespass as a lesser included offense to criminal damage to property in the first degree, and that his counsel committed professional error in failing to request such a charge.

> A person commits the offense of criminal trespass when he or she intentionally damages any property of another person without consent of that other person and the damage thereto is $500.00 or less or knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person.[55]

Craft concedes, however, that "there was no testimony or other evidence as to the amount of damage" that was caused to property. And the Supreme Court of Georgia has held that where the only evidence of interference with property showed the defendant's commission of a life-endangering act, there was no evidence of a "mere knowing and malicious interference with the property of another without his consent," as required for criminal trespass.[56] Consequently, there was no evidence in this case of the lesser included offense of criminal trespass,[57] and counsel did not commit professional error by not requesting a charge on that offense.[58]

---

the standard of care which a reasonable person would exercise).

[51] *Shaw*, supra at 759 (1) (emphasis supplied).

[52] See *Dunagan v. State*, 269 Ga. 590, 593-594 (2) (b) (502 SE2d 726) (1998); *Shaw*, supra.

[53] See generally *Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994) (written request to charge on lesser included offense must always be given if there is any evidence that defendant is guilty of lesser included offense).

[54] See *Chancey v. State*, 258 Ga. App. 319, 321 (4) (a) (574 SE2d 383) (2002).

[55] OCGA § 16-7-21 (a).

[56] *Waugh v. State*, 263 Ga. 692, 694 (6) (437 SE2d 297) (1993).

[57] See *Edwards*, supra at 133.

[58] See *Chancey*, supra.

(c) Craft asserts that his counsel committed professional error by failing to object when the trial court assisted the state in presenting evidence, allegedly in violation of OCGA § 17-8-57. But as we have concluded, the trial court's actions did not violate OCGA § 17-8-57.[59] This assertion is without merit.[60]

(d) Craft's remaining assertion of ineffective assistance of counsel is moot.

*Judgment affirmed in part and reversed in part. Andrews and McFadden, JJ., concur.*

DECIDED MAY 31, 2011 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*John W. Donnelly*, for appellant.
*Kenneth W. Mauldin, District Attorney, David T. Lock, Assistant District Attorney*, for appellee.

---

[59] See Division 4, supra.

[60] See *Moore v. State*, 278 Ga. 397, 401 (2) (e) (603 SE2d 228) (2004) (failure to make a meritless objection is not professional error).