**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 22, 2018**

# In the Court of Appeals of Georgia

A17A2092. WILSON v. THE STATE.

ANDREWS, Judge.

Following a jury trial, Leroy Wilson was convicted of criminal attempt to commit armed robbery, aggravated assault, entering an auto to commit theft, and first degree criminal damage to property. Wilson appeals, challenging the sufficiency of the evidence. He also argues that he received ineffective assistance of counsel at trial and that the trial court erred in failing to merge two of his convictions. For reasons that follow, we affirm in part, vacate in part, and remand for re-sentencing.

1. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and a defendant no longer enjoys a presumption of innocence. See *Buruca v. State*, 278 Ga. App. 650 (629 SE2d 438) (2006). We do not weigh the evidence or resolve credibility issues, but merely determine whether the

jury was authorized to find the defendant guilty beyond a reasonable doubt. See id. at 650-651. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict." Id. at 651.

So viewed, the evidence shows that the victim worked at a restaurant located on Russell Parkway in Warner Robins. On May 29, 2015, she arrived at work around 9:30 a.m., parked in front of the restaurant, and began taking groceries inside. As she returned to her car, she encountered a masked man dressed in dark clothing in the restaurant doorway. The victim tried to run, but fell down, and the man picked her up, placing a gun to her head. The victim managed to get away after a struggle and ran for help. She heard gunshots as she fled.

An employee and a customer at a nearby pawn shop saw the gunman assaulting the victim. The employee called the police from the back of the shop, then heard two gunshots. The police responded, and a patrolman began driving around the area, looking for the gunman. As the patrolman entered a neighborhood approximately one block from the restaurant, he saw Wilson standing in a yard, wearing dark blue jeans rolled up to his ankles, black shoes, and a light-colored t-shirt. When Wilson saw the patrol car, he ran, carrying a black bag.

2

The patrolman apprehended Wilson after a short chase and recovered the bag, which contained medical supplies, as well as a loaded gun with one spent round in the magazine. The victim identified the bag as hers, and she testified that she kept the bag, in which she stored medical supplies needed for her second job, in the back seat of her car. The evidence further showed that ammunition in the gun recovered from the bag bore the same identifying marks as a spent shell casing found outside the restaurant.

Around the time of the incident, an individual residing near the crime scene found a long-sleeved black shirt and a pair of black gloves in his yard. A hat worn by the gunman was also located behind the restaurant. Video surveillance cameras in the area recorded the assault, revealing that a masked individual wearing dark clothing, a black hat, and gloves confronted the victim with a gun, struggled with her briefly, and removed a black bag from the victim's car once she fled the scene. As he left the area, the gunman stopped briefly to fire the gun in the direction of Russell Parkway, striking the car with a bullet.

Based on the evidence presented, the jury found Wilson guilty of criminal attempt to commit armed robbery, aggravated assault, entering an automobile to commit theft, and first degree criminal damage to property. Wilson challenges these

findings on appeal, asserting that the evidence failed to identify him as the assailant and did not establish that the alleged interference with property endangered human life. We disagree.

(a) With respect to identity, Wilson notes that neither the victim nor any other witness identified him as the assailant. But "circumstantial evidence of identity may be sufficient to enable a rational trier of fact to find a defendant guilty beyond a reasonable doubt." *Minor v. State*, 328 Ga. App. 128, 130-131 (1) (761 SE2d 538) (2014) (citation and punctuation omitted). And significant circumstantial evidence tied Wilson to the offenses here.

Specifically, Wilson was observed shortly after the crimes in a nearby neighborhood carrying a bag taken from the victim's car. Although Wilson was not wearing the hat, gloves, or shirt worn by the assailant, his pants were cuffed in the same way as the culprit, and police found the other clothing discarded close to the restaurant. Wilson attempted to elude police, but was captured and found in possession of a gun linked to the crime scene. Such evidence authorized the jury to conclude beyond a reasonable doubt that Wilson was the assailant. See *Minor*, supra at 131 ("[C]ircumstantial evidence of a defendant's identity need not exclude every conceivable inference or hypothesis — only those that are reasonable. To set aside

4

the conviction it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else.") (citation and punctuation omitted); *Roberts v. State*, 322 Ga. App. 659, 662-663 (2) (a) (745 SE2d 850) (2013) (although victim could not positively identify defendant as assailant, jury was authorized to find him guilty based on circumstantial evidence, including that he fled from police near scene and had property belonging to victim, as well as shotgun used during robbery, in his car).

(b) Wilson argues that his conviction for first degree criminal damage to property cannot stand because the State offered no evidence that the interference with property endangered human life. A person commits criminal damage to property in the first degree when he "[k]nowingly and without authority interferes with any property in a manner so as to endanger human life." OCGA § 16-7-22 (a) (1). The phrase "in a manner so as to endanger human life" means "reckless endangerment rather than actual endangerment." *Carthern v. State*, 272 Ga. 378, 381 (529 SE2d 617) (2000). An "actual risk of danger must exist and the defendant must at least act recklessly." Id. (punctuation omitted). As explained by our Supreme Court, "[t]his interpretation is consistent with the purpose of the statute in seeking to protect human

5

life and recognizes the heightened punishment for criminal damage to property when human safety is threatened." Id.

Construed favorably to the verdict, the evidence shows that Wilson shot a gun in the direction of the victim's vehicle and Russell Parkway, a five-lane road. Although Wilson argues that the vehicle was unoccupied at the time, the video surveillance recording shows a steady flow of traffic on Russell Parkway just before the shooting. Under these circumstances, the jury was authorized to find that Wilson recklessly endangered the lives of people on Russell Parkway, in violation of OCGA § 16-7-22 (a) (1).

2. Wilson contends that his trial counsel provided ineffective assistance by not attacking the sufficiency of the indictment. To prevail on this claim, Wilson "must prove both that . . . trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Atkinson v. State*, 301 Ga. 518, 524-525 (6) (801 SE2d 833) (2017) (citation omitted). Failure to satisfy either prong of this test undermines the ineffective assistance claim. See id.

Wilson's allegations focus on Count 1 of the indictment, which charged that he attempted to commit armed robbery as follows:

6

the said accused, in the State of Georgia and County of Houston, on or about the 29th day of May, 2015, did knowingly and intentionally attempt to commit the crime of ARMED ROBBERY, in violation of Code section 16-4-1 of the Official Code of Georgia, in that the said accused did point a 9mm handgun at [the] victim . . . while grabbing onto her person. The accused attempted to push the victim back into a business in an attempt to commit Robbery, an act which constitute[d] a substantial step toward the commission of said crime, contrary to the laws of said State, the good order, peace and dignity thereof.

According to Wilson, Count 1 was flawed because (1) it did not allege that he intended to take property from the person or immediate presence of the victim, and (2) it stated that he took a substantial step toward the commission of robbery, rather than armed robbery. He claims that Count 1 was subject to attack through a special demurrer, general demurrer, or motion in arrest of judgment, and that counsel's failure to challenge the indictment entitles him to a new trial. We disagree.

An indictment is intended "to enable the defendant to prepare his defense intelligently and to protect him from double jeopardy." *Issa v. State*, 340 Ga. App. 327, 334 (3) (796 SE2d 725) (2017) (punctuation and footnote omitted). It is "technically correct and sufficient if it states the offense in the terms and language of the Code or in language so plain that jurors understand the nature of the charged

7

offense." Id. (punctuation and footnote omitted). The true test of an indictment's sufficiency

> is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

Id. (footnote omitted).

The allegations in Count 1 meet these requirements. A criminal attempt results "when, with intent to commit a specific crime, [a defendant] performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. We recognize that Count 1 does not track the criminal attempt statute exactly. But to properly charge attempt, the State must merely "allege that, with an intent to commit the underlying crime, [the defendant] performed some overt act toward its commission." *Coleman v. State*, 318 Ga. App. 478, 480 (1) (735 SE2d 788) (2012) (punctuation and footnote omitted). Read as a whole, Count 1 asserts that, with intent to commit armed robbery, Wilson committed a substantial step toward commission of the crime by pointing a gun at the victim and grabbing her person. See id. at 481

8

(allegations in indictment must be read as a whole). Although Count 1 references an attempt to commit robbery, it clearly alleges use of a gun, and "[a]rmed robbery occurs when a person commits a robbery by use of an offensive weapon." *Rogers v. State*, 255 Ga. App. 416, 418 (1) (b) (565 SE2d 583) (2002) (punctuation omitted).

The language in Count 1 sufficiently apprised Wilson of the crime charged (attempt to commit armed robbery), as well as the manner in which the state alleged that the crime had been committed. Moreover, "[i]f all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good." *Bradford v. State*, 327 Ga. App. 621, 627 (2) (a) (1) (760 SE2d 630) (2014). Admission of the facts as alleged in Count 1 would result in a finding of guilt. See OCGA § 16-4-1; OCGA § 16-8-41 (a) (defining armed robbery).

Given the circumstances here, "there can be no reasonable doubt that [Wilson] was sufficiently informed of the charges against him and also protected from subsequent prosecution for the same crime." *Coleman*, supra at 481. The indictment is not defective, and trial counsel was not deficient in failing to attack it. See *Atkinson*, supra at 526 (6) (g) (trial counsel's failure to file a general or special

9

demurrer to indictment was not ineffective assistance where "the indictment properly set out all of the facts and elements of the crimes necessary to show that [defendant] could be found guilty of the crimes alleged, and the indictment sufficiently informed [defendant] of the allegations against him such that he could prepare an intelligent defense"); *Bradford*, supra (failure to file meritless motion does not constitute deficient performance).

3. Finally, Wilson argues that the trial court erred in failing to merge his convictions for Count 1 (attempted armed robbery) and Count 2 (aggravated assault). As detailed above, Count 1 alleges that Wilson attempted to commit armed robbery when, with the necessary intent, he pointed a gun at the victim, grabbed her, and pushed her into the restaurant. Count 2 alleges that he "did make an assault upon the person of [the victim] with a deadly weapon, to wit: 9mm handgun by pointing it at the victim."

A criminal defendant may not "be convicted of more than one crime if . . . [o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). In determining whether an offense is included in another, we use the "required evidence" test. See *Garland v. State*, 311 Ga. App. 7, 13 (3) (714 SE2d 707) (2011). In other words, "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the

test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. (punctuation and footnote omitted).

As found by our Supreme Court, "[b]ecause aggravated assault does not require proof of any element that armed robbery does not, convictions for both offenses will merge . . . if the crimes are part of the same act or transaction." *Thomas v. State*, 289 Ga. 877, 880 (3) (717 SE2d 187) (2011) (citation and punctuation omitted). The same is true here. Although attempted armed robbery involves greater proof elements than aggravated assault, the latter charge "did not require proof of any fact that was not also required to prove the attempted armed robbery, as that offense could have been proved under the indictment in this case." *Garland*, supra at 13. For purposes of merger, therefore, the question becomes whether the two crimes arose from the same act or transaction.

The State concedes on appeal that the conduct involved in Counts 1 and 2 arose out of the same act or transaction. The record supports this concession. Wilson used the handgun to control the victim during the attempted armed robbery, and the State does not claim that a different act gave rise to the assault. On the contrary, both counts allege that Wilson pointed the gun at the victim, and the victim indicated that

11

the gun was directed at her one time. Nothing in the indictment or the evidence separates the conduct. Merger, therefore, was necessary. See *Mullis v. State*, 321 Ga. App. 720, 721-722 (742 SE2d 750) (2013) (aggravated assault arose out of same act or transaction as criminal attempt to commit armed robbery, resulting in merger). Accordingly, we vacate Wilson's conviction and sentence for Count 2 and remand for re-sentencing with direction that the trial court merge Count 2 into Count 1. See *Morris v. State*, 340 Ga. App. 295, 314 (7) (797 SE2d 207) (2017).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Rickman, J., concur.*