**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 11, 2015**

# In the Court of Appeals of Georgia

A14A1875. CLEMENTE v. STATE.

McMILLIAN, Judge.

Doble Martinez Clemente was tried, along with two co-defendants,[1] by a jury and convicted of armed robbery.[2] Clemente now appeals the denial of his motion for new trial, as amended, contending that the evidence was insufficient to support his conviction. We disagree and affirm.

---

[1] The co-defendants, Cornell Elijah Martinez and Toni Antonio Lopez, are not parties to this appeal. An additional accomplice, Jose Luis Solis-Morales, was tried separately, and this Court affirmed the convictions of Martinez and Solis-Morales at *Martinez v. State*, 318 Ga. App. 254 (735 SE2d 785) (2012) and *Solis-Morales v. State*, 315 Ga. App. 724 (728 SE2d 253) (2012).

[2] The jury acquitted Clemente of the remaining charges of burglary, false imprisonment, and aggravated assault.

Viewed in the light most favorable to the verdict,[3] the evidence shows that on February 2, 2007 at approximately 10:30 p.m., two masked gunmen confronted Rogelio Pineda-Orrozquieta at gunpoint outside his home at 708 Sheffield Road in Norcross and demanded money and drugs. After entering his home, the men forced Pineda-Orrozquieta into a bedroom along with his pregnant wife, young daughter, and a co-worker. Pineda-Orrozquieta and the co-worker were forced to kneel on the floor, and their hands were bound. Pineda-Orrozquieta also saw two additional intruders in another bedroom tying the hands of his brother-in-law and his friend. The intruders apparently believed Pineda-Orrozquieta was in possession of money from the sale of drugs and continued to demand money. When officers from the Norcross Police Department arrived in response to a 911 call placed by Pineda-Orrozquieta's wife, they apprehended three intruders and seized two handguns. Shortly thereafter, police learned from the victims that there was a fourth man involved and within minutes began searching the surrounding area.

Officers Todd Bureta and Donald Butynski found Clemente, who was wearing dark clothes and talking on a cell phone, walking on Lancelot Drive, a street that runs

---

[3] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

parallel to Sheffield Drive.[4] Clemente initially told officers that he had been driving a car that had been taken by "three black males." At first he claimed he was driving a Mercedes and then said it was a BMW, but could not say exactly what make the vehicle was. Clemente was the only individual the police found walking the streets at that time of night. Officers brought Clemente to the incident location, but the victims told police they were unable to identify any of the intruders because they had all been wearing ski masks. At that time, officers noticed a silver BMW with a Florida temporary tag parked in the driveway of an abandoned house next door. When they pressed the button of the BMW key ring they had found in Clemente's pocket, it unlocked the BMW's doors and turned its interior lights on. Police were able to see a black ski mask inside the BMW.

After Clemente was arrested and advised of his *Miranda* rights, he gave a statement to the police[5] in which he claimed that he drove up from Tampa, Florida the

---

[4] At trial, Officer Bureta explained it would have been possible for Clemente to reach that location by cutting across two yards behind 708 Sheffield Drive.

[5] Although Clemente did not testify at trial, his statements were admitted into evidence.

3

day before with his friend Samuel Melendez in a BMW.[6] They were looking for some painting work because he needed money. He met two of the other individuals apprehended by police the night he and Melendez arrived in Atlanta and the third the following day. He told police he did not know where the five of them were going that evening, but Melendez told him to drive the BMW because they were going someplace "to do a job." He claimed that he parked in the driveway of the abandoned house next to 708 Sheffield Drive and stayed in the car while the other four men went next door. He denied knowing anything about guns until Melendez came out of the house and threw a shotgun at him and told him to hide it.[7] Clemente admitted to jumping a fence and hiding the shotgun, and he later returned to the scene with officers to show them exactly where he had hidden the shotgun behind some bushes

---

[6] The day after the incident, Glenda Cruz came to the Norcross Police Department, claiming to be the owner of the BMW and demanding the return of her vehicle. She told police that she had loaned her car to Clemente, but denied knowing Melendez.

[7] At trial, Officer Andrew Whaley testified that they were unable to locate Melendez and that a warrant was still out for his arrest.

a few houses down. Police located another ski mask and a set of gloves hidden with the loaded shotgun.[8]

In his sole enumeration of error, Clemente asserts the evidence was not sufficient to support his conviction for armed robbery as a party to the crime. When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt." (Citations omitted.) *McNeal v. State*, 326 Ga. App. 429, 429 (756 SE2d 660) (2014).

Under Georgia law, a person may be convicted of a crime even if he does not directly commit the crime but, instead, "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3) and (4). And, "[w]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." (Citation

---

[8] Police had also recovered three black ski masks with the intruders inside the home, and Officer Whaley testified that those masks were identical to the mask found with the shotgun.

and punctuation omitted.) *Fluornoy v. State*, 294 Ga. 741, 745 (3) (755 SE2d 777) (2014).

Clemente argues that his mere presence near the scene of the armed robbery is insufficient to sustain his conviction. "It is, of course, true that mere presence or association, without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction." (Citation and punctuation omitted.) *Newsome v. State*, 324 Ga. App. 665, 667 (1) (751 SE2d 474) (2013). However, whether Clemente was a party to the crimes and aided and abetted the other four men in the armed robbery or intentionally advised, encouraged, or counseled them, is a question for the jury. See *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

And, contrary to his assertions, the State presented evidence demonstrating more than Clemente's mere presence. Clemente told police he drove the BMW that night and that they went to 708 Sheffield Road, at 10:30 p.m., to "go look for some money." And although Clemente claimed he believed they were going to be painting, Officer Andrew Whaley testified that at the time of his arrest, Clemente was wearing gray pants, a "camo" shirt, and a green jacket, and had nothing that would indicate

6

he was a painter. Clemente also admitted to hiding a shotgun after police arrived before fleeing from the scene.

In addition, Martinez, one of the co-defendants tried with Clemente, testified at trial and admitted to entering the house, though he claimed he thought they were only going there to buy cocaine.[9] He also testified that Clemente was an active participant who held the shotgun when they walked over to the house.[10] According to Martinez, he and Clemente waited in the backyard until Clemente got a call from one of the other men who told Clemente to send Martinez inside to help look for the drugs. Clemente continued to wait with the shotgun outside the house. There is sufficient evidence from which a jury could find that Clemente was a designated

---

[9] On the night of the incident, the second co-defendant, Lopez, also admitted to entering the house and likewise claimed they were only there to get drugs.

[10] We note that, although a defendant may not be convicted on the uncorroborated testimony of an accomplice, "only slight evidence of a defendant's identity and participation from an extraneous source is required to corroborate the accomplice's testimony and support the verdict." *Hines v. State*, 320 Ga. App. 854, 857 (1) (740 SE2d 786) (2013). And corroboration may consist of either direct or circumstantial evidence that connects the defendant with the crime, tends to show his participation therein, and would justify an inference of his guilt independently of the accomplice's testimony. Id. Here, Clemente's own statements to police, along with the observations and testimony of officers, provided sufficient corroboration. See id. ("Even the accused's own statement can serve to corroborate his accomplice's inculpatory testimony.") (citation and punctuation omitted).

"lookout" or a "getaway" driver for the group, and thus, was a party to the crime of armed robbery. See *Buruca*, 278 Ga. App. at 652 (1) (finding sufficient evidence to sustain defendant's conviction of armed robbery). See also *Johnson v. State*, 299 Ga. App. 706, 708 (1) (a) (683 SE2d 659) (2009) (getaway driver who waits for his co-defendants to return to the car is also guilty of his co-defendant's crimes).

We likewise reject Clemente's assertion that the State failed to exclude every reasonable hypotheses except his guilt as required by former OCGA § 24-4-6.[11] To support a verdict, circumstantial evidence need exclude only *reasonable* hypotheses. See *McNeal*, 326 Ga. App. at 432 (1) ("In order to support a conviction, such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses.") (citation omitted; emphasis in original). And whether circumstances are sufficient to exclude every reasonable hypothesis is a question for the jury, and "that finding will not be disturbed unless the verdict of guilt is insupportable as a matter of law." (Citation omitted.) *Wright v. State*, 302 Ga. App. 332, 333 (690 SE2d 654) (2010). Given the record in this case, we cannot say that the jury's guilty verdict is insupportable as a matter of law.

---

[11] This case was tried under Georgia's previous Evidence Code. Former OCGA § 24-4-6 is carried forward in the new Evidence Code as OCGA § 24-14-6.

Moreover, Clemente's conviction was supported by direct evidence through the testimony of Martinez. See *State v. Canup*, 300 Ga. App. 678, 682 (2), n. 3 (686 SE2d 275) (2009) (reasonable hypothesis rule applies only when the evidence against the accused is entirely circumstantial). And although Clemente argues that he had no knowledge that any criminal activity was going to take place, "it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citation and punctuation omitted.) *Bighams v. State*, 296 Ga. 267, 268-269 (1) (b) (765 SE2d 917) (2014).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*