**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 26, 2015**

# In the Court of Appeals of Georgia

A14A2045. SULLIVAN v. THE STATE.

McMILLIAN, Judge.

Following a jury trial, Michael Sullivan was convicted of one count of aggravated assault, one count of criminal damage to property in the first degree, and one count of criminal damage to property in the second degree. He appeals following the denial of his motion for new trial, contending that the trial court erred in failing to merge the two counts of criminal damage to property and that his trial counsel was ineffective for failing to object during the State's closing argument. Finding no error, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the record shows that in 2008, Sullivan was in the

process of a divorce, and his wife hired a private investigative firm to conduct surveillance on him and his paramour. Janette Gagnon worked as a private investigator for the firm and was assigned to conduct surveillance of Sullivan while his wife was out of town. On the morning of September 6, 2008, she positioned herself at the corner of Bethel Road and Brown's Bridge Road in Gainesville, Georgia to monitor certain vehicles coming or going from Sullivan's nearby house. At approximately 3:00 p.m., she saw one of the vehicles turn onto Bethel Road, and she proceeded to follow the vehicle down Bethel Road and onto Lake Hollow, the street where Sullivan's house was located. She passed Sullivan's house but lost track of the vehicle and decided to return to her previous post. As she was driving back to Bethel Road, a large, four-wheel all-terrain vehicle ("ATV") came up out of the woods and drove right up to the rear bumper of her car. She saw the driver standing up over the handlebars of the ATV and recognized him as Sullivan. Realizing that Sullivan had caught on to the surveillance, Gagnon called her partner, Ben Pierce, who had also set up surveillance nearby, to let him know.

As soon as she hung up the phone, Sullivan took off on his ATV through the woods, and Gagnon pulled into the nearby driveway of an abandoned barn to call Pierce again to determine what they should do next. Within seconds, Sullivan came

2

"flying across the street at a high rate of speed, right up to [her] car." It appeared to Gagnon that Sullivan was purposely headed right for her car, and she became frightened. He blocked her in between his ATV and a tree, with the ATV parked beside her driver's side door. He was standing up on the ATV and appeared to be in a rage, shouting and cursing at Gagnon. He got off the ATV and walked toward her, still shouting and cursing. Gagnon told him she was just turning around and to leave her alone or she would call the police.

However, Sullivan grabbed the car window, which was rolled down 1-2 inches, and tried to pull it off. He also tried to forcibly pull the car door open, while yelling at her to "get out of the car, bitch." Gagnon, fearing that Sullivan was going to hurt her, hung up the call she had been on with Pierce, and started to call 911.[1] Sullivan then got back on the ATV and drove away toward the road before coming back at her, in reverse, at full speed, and smashing into the driver's side door of her car, breaking the window and sending glass flying everywhere. Before speeding off, Sullivan turned to her and said, "oops, sorry, bitch." She immediately dialed 911, and as she

---

[1] Pierce testified that he had remained on the phone with Gagnon during this time and heard a male screaming at her and calling her a "bitch." He then heard Gagnon frantically screaming and what sounded like a loud accident. He quickly called 911 and rushed to her location where he found the driver's side door of her car was smashed, the window broken, and Gagnon with cuts on her face.

and Pierce were waiting for police to arrive, she saw a white BMW 745, one of the vehicles owned by Sullivan, drive by, "flying . . . kicking up dust" headed out towards Brown's Bridge Road. Gagnon suffered minor scrapes from the glass and swelling of her knee that had been resting against the car door. Photographs introduced at trial showed the damage to her car door, rear view mirror, and windshield, which cost $2,868.64 to repair.

Sullivan testified in his own defense and admitted to following "real close behind [Gagnon's] car" when he first spotted her driving past his house. He followed her to the spot where she had pulled over, "shoot[ing]" fast across Bethel Road and stopping within five feet of her car door. According to Sullivan, he asked her if he could help her with something, and she rolled her window down one to two inches but did not respond. He admitted to climbing down from the ATV, trying to look through the car window, and calling her a "bitch." However, he claimed that when he left, he meant to speed off quickly to spray rocks on her car, but accidentally put the ATV in reverse and ran into her car. He further admitted to saying, "sorry, bitch" and immediately returning to his house before taking off with friends for dinner plans.

In rebuttal, the State presented the testimony of Sandra Partridge, the Forsyth County Chief Assistant District Attorney. Partridge stated that during a calendar call

4

for his case, Sullivan approached her and asked to speak to her about the case. Although she instructed him several times that he should not talk to her about the facts of the case and that anything he said to her could be used against him at trial, he insisted on telling her that all he was trying to do to Gagnon was "to scare her."

1. In his first enumeration of error, Sullivan asserts that the trial court erred in failing to merge his convictions for the criminal damage to property charges because criminal damage to property in the first degree and criminal damage to property in the second degree "are merely variations of the same act which vary only by degree and the commensurate sentencing range." Sullivan is correct that Georgia law generally prohibits multiple convictions if one crime is included in the other or if one crime differs from the other only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission. See OCGA § 16-1-7 (a) (1)[2] and OCGA § 16-1-6. However, because criminal damage to property in the second degree is not a lesser included offense to criminal damage to property in the first degree and the two statutory provisions protect against different risks of injury, we find no merit to this enumeration.

[2] OCGA § 16-1-7 (a) (2) applies to crimes that "differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct" and is not implicated here.

5

To determine if one crime is included in and therefore merges with another under OCGA § 16-1-6 (1),[3] "we apply the required evidence test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine whether each offense requires proof of a fact which the other does not." (Citations and punctuation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (4) (738 SE2d 571) (2013). Thus, "[a] single act may constitute an offense which violates more than one statute, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." (Citation and punctuation omitted.) *Linson v. State*, 287 Ga. 881, 885 (4) (700 SE2d 394) (2010).

Here, Sullivan's conviction for criminal damage to property in the first degree, as indicted, requires proof that he "[k]nowingly and without authority interfere[d] with any property in a manner so as to endanger human life." OCGA § 16-7-22 (a) (1). And his conviction for criminal damage to property in the second degree, as indicted, requires proof that he "[i]ntentionally damage[d] any property of another

---

[3] OCGA § 16-1-6 (1) provides that a crime is included in a crime charged in an indictment when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged."

person without [her] consent and the damage thereto exceeds $500.00." OCGA § 16-7-23 (a) (1). Thus, each requires proof of a fact which the other does not because criminal damage to property in the first degree requires evidence that the defendant acted in a manner that endangered human life, whereas criminal damage to property in the second degree requires evidence that the damage to property exceeds $500, neither of which is required in the other.

Moreover, to the extent that Sullivan is asserting that his convictions should have been merged under OCGA § 16-1-6 (2), we find his contentions to be unavailing for similar reasons. OCGA § 16-1-6 (2) provides that a crime is included in another if "[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." See *Stepp v. State*, 286 Ga. 556, 557 (690 SE2d 161) (2010) (describing OCGA § 16-1-6 (2) as one of several "additional statutory provisions concerning prohibitions against multiple convictions for closely related offenses") (citation omitted). Here, although the criminal damage to property charges are defined by degrees, they prohibit different risks of injury – knowing interference with property in a manner that endangers human life and damage that

7

results in a certain level of damage to the property.[4] Accordingly, the trial court did not err in declining to merge the two convictions. See *Carthern v. State*, 272 Ga. 378, 380 (529 SE2d 617) (2000) (explaining the fundamental differences between the two separate offenses addressed in OCGA § 16-7-22 (a), the primary purpose of which is to protect human life and safety, and OCGA § 16-7-23 (a), which has a primary purpose of protecting private property).

2. Sullivan also argues that his trial counsel was ineffective for failing to object to the State's closing argument regarding his defense of accident, which Sullivan contends improperly shifted the burden of proof to him. To succeed on this claim, Sullivan "must show both that his counsel's performance was deficient and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *Batten v. State*, 295 Ga. 442, 445 (3) (761 SE2d 70) (2014). "It is the appellant's heavy burden to prove the ineffective assistance of counsel" and counsel "is strongly presumed to have rendered adequate assistance and

---

[4] In contrast, criminal trespass is a lesser included offense of second degree criminal damage to property because the "salient difference" between the two crimes is whether the damage to the property exceeds $500. See *Hill v. State*, 259 Ga. App. 363, 365 (1) (577 SE2d 61) (2003).

8

made all significant decisions in the exercise of reasonable professional judgment." (Citation and punctuation omitted.) Id.

While acknowledging the general principle that the defense of accident does not apply when the accused was criminally negligent, Sullivan asserts that the State improperly argued that Sullivan could not assert accident as a defense because he was criminally negligent when he was "pissed off" and confronting Gagnon. However, the record reveals that the State argued Sullivan was criminally negligent for more than simply being angry. It argued that the accident defense did not apply in this case because Sullivan had a criminal scheme or undertaking or acted with criminal negligence when he was "riding right on her bumper . . . gunning it across the street . . . screaming at her, saying cuss words." The State also pointed out that Sullivan's own testimony showed he was confronting her on purpose and that there was "more than enough evidence to show that he intended this to happen. He rear ended her on purpose." Thus, the State's closing argument correctly stated the law on accident, and Sullivan's trial counsel was not deficient for failing to object. See *Yeager v. State*, 281 Ga. 1, 2-3 (2) (635 SE2d 704) (2006) (correct statement of the law on accident includes the phrase "criminal negligence" to enable the jury to apply the charge on accident to the facts as they might be found to exist); *Sampson v. State*, 282 Ga. 82,

9

85 (6) (646 SE2d 60) (2007) (failure to make meritless objections cannot support a claim of ineffective assistance of counsel).

Moreover, the record shows that the trial court charged the jury on the State's burden of proof on each element of the crime, including the State's burden to prove intent on each of the charges, and the State's burden to disprove any defense raised by the evidence. And the trial court properly charged the jury on the defense of accident. Accordingly, the trial court did not err in denying Sullivan's motion for new trial on this ground. See *Allen v. State*, 277 Ga. 502, 504 (591 SE2d 784) (2004) (rejecting appellant's claim for ineffective assistance of counsel for failing to object to closing argument and pretermitting "whether the prosecutor misrepresented the law of justification during closing argument because jurors are presumed to follow the instructions of the trial court").

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*