**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 28, 2016**

# In the Court of Appeals of Georgia

A16A1849. EPPERSON v. THE STATE.

BARNES, Presiding Judge.

A jury found Rodney Rodriguez Epperson guilty of armed robbery, aggravated assault, aggravated battery, and three counts of possession of a firearm during the commission of a felony. The trial court subsequently denied Epperson's motion for new trial. On appeal, Epperson contends that the trial court erred in denying his motion to dismiss the indictment based on the alleged violation of his constitutional right to a speedy trial, that the evidence was insufficient to support his convictions, and that the trial court should have merged his aggravated battery conviction into his armed robbery and aggravated assault convictions for purposes of sentencing. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that on the evening of April 20, 2010, the victim and his girlfriend were at their friend's house smoking crack cocaine. Several times that night, when the group ran out of drugs, the victim would provide more money, and a member of the group would walk over to the neighboring apartments and buy more drugs from Epperson and one of his associates. When the victim ran out of money, he decided to return to his apartment to get more money for drugs. The victim did not have transportation, but Epperson came over to the friend's house where the victim and the others had been smoking crack cocaine and agreed to give the victim a ride so that he could get his money. The victim then got into a cream-colored car with Epperson and another individual, and they drove to the victim's apartment.

Upon arriving at his apartment, the victim woke up his brother, who lived with the victim and had previously agreed to safeguard the victim's money for him. After retrieving the victim's money, the brother noticed a man with dreadlocks standing at the doorway of the bedroom next to the victim. The victim's brother, however, did not get a good look at the man because he was sleepy from having just been

2

awakened by the victim. While the victim and man were leaving the apartment, the brother overheard the man asking the victim for the money, but the victim told him he would have to wait until they got back to the car. The brother looked out the window, where he saw a cream-colored car drive up and the victim and the man get inside and leave together.

The victim then was driven in the cream-colored car to the apartment complex next to his friend's house where he had been smoking crack cocaine. The victim got out of the car and bought more drugs at one of the apartment units, but as he was returning to the car, he was robbed at gunpoint. The victim initially took his wallet and the drugs out of his pockets to hand over to the gunman, but the victim then attempted to disarm the gunman using a maneuver he had learned in the military. The victim's attempt was unsuccessful, and the gunman shot him several times.

The victim's friend had been standing on the porch of her house next to the apartment complex and had seen the cream-colored car travel over to the neighboring apartments a few minutes before the gunshots. When she heard the gunshots, the victim's friend ran from her house over to the apartment complex, where she saw Epperson running away from the victim's body with a gun in his hand. Epperson

looked up and saw the victim's friend, jumped into the cream-colored car, and fled from the scene.

The friend ran back to her house and told the victim's girlfriend that the victim had been shot. The girlfriend ran over to the apartment complex, where she found the victim lying motionless in the street. The victim told his girlfriend that he had just been robbed. The victim later testified that he did not remember anything after the first shot was fired, and he did not identify the person who had robbed him at trial.

The police and an ambulance responded to the scene. The victim was transported to the hospital and treated for his gunshot wounds. One of the gunshots damaged his spinal cord, paralyzing the victim from the chest down.

Epperson was arrested in June 2010 for the armed robbery incident at issue in this case and for two other unrelated armed robberies, and he was not released on bond and remained in jail while awaiting trial. In December 2010, a grand jury indicted Epperson in the present case on charges of armed robbery, aggravated assault, aggravated battery, and three counts of possession of a firearm during the commission of a felony.[1] The trial of the case thereafter was delayed several times

---

[1] Epperson also was indicted for possession of a firearm by a convicted felon, but the State later requested and obtained entry of a nolle prosequi order on that count.

because of, among other things, Epperson's consent to a continuance, an overcrowded docket, turnover in the district attorney's office, and the fact that the paralyzed victim was often medically unstable and unavailable for trial.

In July 2013, Epperson filed a motion to dismiss the indictment based on the alleged violation of his constitutional right to a speedy trial. After conducting a hearing, the trial court denied the motion, and the case proceeded to a jury trial in June 2014.

At trial, the State called several witnesses, including the victim, the victim's brother, the victim's girlfriend, and the victim's friend who lived at the house next to the apartments where the group had been smoking crack cocaine. Epperson elected not to testify and did not call any defense witnesses. After hearing all the evidence, the jury found Epperson guilty of the charged offenses.

For purposes of sentencing, the trial court merged Epperson's aggravated assault conviction into his armed robbery conviction and merged together his three firearm possession convictions. The trial court sentenced Epperson to life in prison for armed robbery, a consecutive sentence of 20 years in prison for aggravated battery, and a consecutive sentence of 5 years in prison for the firearm possession conviction.

Epperson filed a motion for new trial, challenging the trial court's failure to grant his motion to dismiss the indictment on constitutional speedy trial grounds, the sufficiency of the evidence to convict him of the charged offenses, and the trial court's failure to merge his aggravated battery conviction into his armed robbery and aggravated assault convictions. Because the original trial judge who had presided over the trial and sentencing of Epperson retired, a new trial judge was assigned to hear the motion for new trial. Following a hearing, the newly assigned trial judge addressed Epperson's motion for new trial in a detailed order, which included specific findings related to Epperson's speedy trial claim. The trial judge noted that, "[i]n an abundance of caution," he had independently reevaluated Epperson's motion to dismiss the indictment on constitutional speedy trial grounds and had concluded that no constitutional violation had occurred. The trial court also concluded that the evidence was sufficient to sustain the verdict and that Epperson's aggravated battery conviction did not merge with his other convictions. In light of these conclusions, the trial court denied Epperson's motion for new trial, and this appeal followed.

1. Epperson first contends that the trial court erred in denying his motion to dismiss the indictment because his constitutional right to a speedy trial was violated as a result of the delay between his arrest and trial. We disagree.

6

A criminal defendant is guaranteed a speedy trial under the Sixth Amendment to the United States Constitution and the Georgia Constitution. See U. S. Const., Amend. VI; Ga. Const., Art. I, Sec. I, Par. XI (a). "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." *Salahuddin v. State*, 277 Ga. 561, 562 (2) (592 SE2d 410) (2004).

> When considering a motion to dismiss on speedy trial grounds, the trial court must conduct a two-part test as set forth in the United States Supreme Court decisions in *Barker v. Wingo*, 407 U.S. 514, 530 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647, 651-652 (112 SCt 2686, 120 LE2d 520) (1992). First, the trial court must determine whether the interval from the defendant's arrest, indictment, or other formal accusation to trial is sufficiently long to be considered presumptively prejudicial. If the delay is presumptively prejudicial, the trial court must then determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant.

(Citation omitted.) *Smith v. State*, 336 Ga. App. 229, 230-231 (2) (784 SE2d 76) (2016).

Application of the *Barker-Doggett* test "to the circumstances of a particular case is a task committed principally to the discretion of the trial courts, and it is

7

settled law that our role as a court of review is a limited one." *State v. Buckner*, 292

Ga. 390, 391 (738 SE2d 65) (2013). "In reviewing the trial court's resolution of a

speedy trial claim, we must accept the court's findings of fact if the record contains

any evidence to support them, and we will defer to the trial court's ultimate

conclusion unless it amounts to an abuse of discretion[.]" (Citation and punctuation

omitted.) *York v. State*, 334 Ga. App. 581, 584 (2) (780 SE2d 352) (2015).

As previously noted, the newly assigned trial judge who heard Epperson's

motion for new trial conducted a hearing and independently reviewed and reevaluated

all of the evidence and the pleadings associated with Epperson's motion to dismiss

the indictment on speedy trial grounds. In a detailed order, the trial judge found that

the delay of several years was presumptively prejudicial, triggering consideration of

the four-factor balancing test set forth in *Barker* and *Doggett*. Analyzing those four

factors, the trial judge found that the length of the delay was uncommonly long and

weighed heavily against the State; that the reason for the delay was the negligence of

the State rather than bad faith, which weighed minimally against the State; that

Epperson's delay in asserting his speedy trial right weighed heavily against him; and

that the prejudice factor weighed slightly against Epperson. The trial judge then

balanced the four factors and concluded that Epperson had not been deprived of his

constitutional right to a speedy trial, and that his motion to dismiss the indictment on speedy trial grounds thus had been properly denied.

On appeal, Epperson contends that the trial judge assigned to hear his motion for new trial erred in finding that his motion to dismiss the indictment on speedy trial grounds had been correctly denied. Specifically, Epperson maintains that the newly assigned trial judge erred by finding that the fourth and final factor of the *Barker-Doggett* balancing test, the prejudice factor, weighed slightly against him.[2] According to Epperson, the prejudice factor should have been weighed against the State because he was not required to present particularized proof of prejudice, the length of the delay created a presumption of prejudice, and the case was not complex and could have been brought to trial more quickly by the State. Epperson maintains that if the prejudice factor had been properly weighed against the State, three of the four *Barker-Doggett* factors then would have weighed in his favor, and the balancing of

---

[2] Epperson also challenges the initial denial of his motion to dismiss the indictment on speedy trial grounds by the trial judge originally assigned to the case. However, as noted above, Epperson's motion to dismiss was later reviewed de novo and independently decided by the trial judge assigned to his motion for new trial. Consequently, the original trial judge's ruling on the motion to dismiss was rendered moot and will not be separately considered on appeal. We also note that Epperson has not challenged the newly assigned trial judge's rulings with respect to the first three *Barker-Doggett* factors.

those factors would have led the trial court to find that his speedy trial right had been violated. We are unpersuaded.

The prejudice factor of the *Barker-Doggett* balancing test "addresses three interests which the right to a speedy trial was designed to protect, with the last interest being of the most import; these interests are to prevent pre-trial incarceration from being oppressive, to minimize any anxiety and concern on the part of the accused, and to limit possible impairment of the defense." (Citation and punctuation omitted.) *Jones v. State*, 296 Ga. 561, 571 (7) (769 SE2d 307) (2015). Additionally, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655 (III) (A). Hence, as part of its analysis of the prejudice factor, a trial court should take into account any presumption of prejudice that has arisen as a result of the length of the delay between the defendant's arrest and trial, with the presumption intensifying over time. See *Wilkie v. State*, 290 Ga. 450, 451 (721 SE2d 830) (2012); *Smith v. State*, 338 Ga. App. 62, 72-73 (1) (d) (i) (789 SE2d 291) (2016).

In analyzing Epperson's speedy trial claim as part of the motion for new trial, the trial court noted that Epperson was not required to present affirmative proof of

10

particularized prejudice and factored this into its analysis. The trial court then considered the specific interests addressed by the prejudice factor of the *Barker-Doggett* balancing test and found that, while Epperson's pre-trial incarceration was excessive, Epperson was also being held on other, unrelated charges during the same time period. The trial court further noted that Epperson never testified about his speedy trial claim, never offered any evidence regarding his level of anxiety or concern, and never presented any evidence that his defense had been impaired by the delay. In light of these findings, the trial court found that the prejudice factor weighed slightly against Epperson.

We discern no error by the trial court in its analysis of the prejudice factor. Where, as in the present case, "the defendant has made no attempt at all to demonstrate (or even argue) that he has suffered any particular prejudice to his mental or physical condition or to his defense strategy, any prejudice that might be presumed by virtue only of the passage of time will carry very little weight in the *Barker*[-*Doggett*] analysis." *Phan v. State*, 290 Ga. 588, 596 (1) (d) (723 SE2d 876) (2012). Accordingly, we conclude that "[g]iven the paucity of evidence of actual prejudice, the trial court did not abuse his discretion in weighing the prejudice factor in the [S]tate's favor." *Cawley v. State*, 330 Ga. App. 22, 28 (2) (d) (766 SE2d 581) (2014).

11

See *Dillard v. State*, 297 Ga. 756, 761-762 (4) (778 SE2d 184) (2015) (trial court did not err in weighing prejudice factor against defendant, where defendant failed to show that his pre-trial incarceration harmed his mental health, that "the delay interfered with his ability to present evidence which would have strengthened his defense," or that he suffered "any harm other than the incarceration itself"); *Smith*, 336 Ga. App. at 234-235 (2) (b) (iv) (although delay of approximately three years and three months between arrest and trial was presumptively prejudicial, the trial court did not err in weighing prejudice factor against defendant, where defendant was confined on other charges, did not testify regarding any anxiety he suffered, and failed to show that his defense was impaired by the delay).

2. Epperson contends that the evidence was insufficient to support his convictions because the State failed to prove that he was the perpetrator of the charged offenses. Epperson emphasizes that the victim was unable to identify him as the gunman, and he argues that the testimony of the other State's witnesses provided insufficient circumstantial evidence to prove his identity as the perpetrator. Again, we disagree.

"When an appellant challenges the sufficiency of the evidence to support his conviction, the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation and footnote omitted; emphasis in original.) *Ward v. State*, 312 Ga. App. 609, 609-610 (1) (718 SE2d 915) (2011). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Furthermore, the testimony of a single witness is generally sufficient to establish a fact, OCGA § 24-14-8, and the credibility of a particular witness's testimony is for the jury to determine. *Reyes v. State*, 334 Ga. App. 552, 557 (3) (780 SE2d 674) (2015).

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. As the language of the statute reflects, the

> circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. And whether circumstances are sufficient to exclude every reasonable hypothesis is a question for the jury, and that finding will not be disturbed unless the verdict of guilt is insupportable as a matter of law.

13

(Citations and punctuation omitted; emphasis in original.) *Clemente v. State*, 331 Ga. App. 84, 87 (769 SE2d 790) (2015).

Guided by these principles, we turn to the testimony in this case. The victim's girlfriend testified that on the evening of the robbery, she saw the victim get into a car with Epperson at their friend's house, and the victim's friend similarly testified that she saw the victim get into a car with Epperson and leave to go to his apartment to get his money for more drugs. The victim's brother testified that when the victim subsequently came to their apartment and got money for more drugs, he saw a man with dreadlocks asking the victim for the money, and then saw the victim and the man get into a car and drive away. The description of the car given by the victim's brother matched the description of the car given by the victim's friend, and Epperson was identified as having dreadlocks during the trial. The victim's friend also testified that later that evening, she saw the same car pull into the apartment complex next to her house, and, immediately after hearing gunshots, saw Epperson run away from the victim's body with a gun in his hand and flee in the same car.

While the victim could not identify the gunman, the combined testimony of the other witnesses, construed in favor of the verdict, was sufficient to enable a rational jury to find Epperson guilty beyond a reasonable doubt as the perpetrator of the

14

charged crimes and to exclude every reasonable hypothesis except that of his guilt. *Jackson*, 443 U. S. at 319 (III) (B). How much weight and credibility to afford the witness testimony identifying Epperson and linking him to the victim was for the jury to determine rather than this Court. See *Sutton v. State*, 295 Ga. 350, 352 (1) (759 SE2d 846) (2014); *Trammell v. State*, 328 Ga. App. 45, 47 (1) (761 SE2d 470) (2014). Furthermore, evidence of Epperson's presence at the scene of the shooting and his conduct before and after the shooting of the victim, including his flight from the crime scene, gave rise to an inference that he participated in the shooting. See *Babbage v. State*, 296 Ga. 364, 367 (1) (768 SE2d 461) (2015); *Johnson v. State*, 277 Ga. App. 499, 503 (1) (a) (627 SE2d 116) (2006). Because the jury was authorized to convict Epperson based on the testimony of the State's witnesses, his challenge to the sufficiency of the evidence is without merit.

3. Epperson contends that the trial court should have merged his aggravated battery conviction into his armed robbery and aggravated assault convictions for purposes of sentencing. We do not agree.[3]

---

[3] The State concedes in its brief that Epperson's aggravated battery conviction merged into his armed robbery and aggravated assault convictions, but we are not bound by the State's concession and must perform our own independent analysis of the merger question. See *Shelton v. State*, 251 Ga. App. 34, 36 (1) (553 SE2d 358) (2001).

(a) We first address Epperson's contention that his aggravated battery conviction should have been merged into his armed robbery conviction. "Georgia law prohibits multiple convictions if one crime is included in the other." (Citations and punctuation omitted.) *Ledford v. State*, 289 Ga. 70, 71 (1) (709 SE2d 239) (2011). See OCGA § 16-1-7 (a) (1). A crime is included in the other when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." OCGA § 16-1-6 (1). To determine whether one crime is included in another under OCGA § 16-1-6 (1), we apply the required evidence test as adopted in *Drinkard v. Walker*, 281 Ga. 211, 215-217 (636 SE2d 530) (2006).

> Under the required evidence test, neither offense is included in the other if each statutory provision requires proof of a fact which the other does not. Consequently, when each of two statutes requires proof of an additional fact which the other does not, an acquittal or conviction under one statute does not exempt the defendant from prosecution and punishment under the other, even though the charges are based on a single act.

(Citation and punctuation omitted.) *Petro v. State*, 327 Ga. App. 254, 259 (2) (758 SE2d 152) (2014).

As to aggravated battery, the indictment charged that Epperson "maliciously cause[d] bodily harm to [the victim] by depriving said person[] of the use of his legs, members of said victim's body," in violation of OCGA § 16-5-24 (a). As to armed robbery, the indictment charged that Epperson, with the intent to commit a theft, took money from the victim by use of a handgun, an offensive weapon, in violation of OCGA § 16-8-41 (a). Based on these charges and the underlying criminal statutes, Epperson's aggravated battery conviction did not merge into his armed robbery conviction. Because the taking of the victim's property was not a fact required to establish the aggravated battery offense, and because depriving the victim of a member of his body was not a fact required to establish the armed robbery offense, the two offenses did not merge under the required evidence test. See *Blanch v. State*, 306 Ga. App. 631, 635 (4) (703 SE2d 48) (2010); *Smashum v. State*, 293 Ga. App. 41, 43 (2) (666 SE2d 549) (2008).

Epperson, however, argues that his aggravated battery conviction should have been merged into his armed robbery conviction in light of our Supreme Court's recent decision in *Regent v. State*, 299 Ga. 172 (787 SE2d 217) (2016). His argument is unavailing under the circumstances of this case.

In *Regent*, our Supreme Court reiterated that even if two crimes do not merge under the required evidence test applicable under OCGA § 16-1-6 (1), that does not necessarily end the merger analysis. 299 Ga. at 175. Rather, the Supreme Court explained, merger of the offenses still may be required under Georgia's other statutory definitions of included offenses, including OCGA § 16-1-6 (2), which provides that one crime is included in another if that crime differs from the other "only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." *Regent*, 299 Ga. at 175-176. See also *Ledford v. State*, 289 Ga. 70, 73 (1) (709 SE2d 239) (2011); *Hernandez v. State*, 317 Ga. App. 845, 851-852 (3) (733 SE2d 30) (2012). Applying OCGA § 16-1-6 (2), our Supreme Court in *Regent* held that the defendant's convictions for aggravated assault and aggravated battery, which were based on the single criminal transaction of the defendant twice stabbing the victim in quick succession, merged because they differed only with respect to the seriousness of the injury or risk of injury suffered by the victim. 299 Ga. at 176.

Contrary to Epperson's contention, *Regent* does not support the merger of his aggravated battery and armed robbery convictions. While the aggravated battery and armed robbery in the present case were based on the same criminal transaction,

18

aggravated battery and armed robbery do not differ only with respect to the seriousness of the injury or risk of injury suffered by the victim. Aggravated battery and armed robbery do not simply prohibit different degrees of injury or risk of injury; rather, the two crimes prohibit entirely different *categories* of injury – depriving a victim of a member of his body versus depriving a victim of property. Thus, the two offenses serve different primary purposes and do not merge under OCGA § 16-1-6 (2), in contrast to the offenses in *Regent*. See *Sullivan v. State*, 331 Ga. App. 592, 596 (1) (771 SE2d 237) (2015) (offenses did not merge under OCGA § 16-1-6 (2) where they "prohibit different risks of injury" and serve different primary purposes, such as protecting human life and safety versus protecting private property).

For these combined reasons, Epperson's convictions for aggravated battery and armed robbery did not merge under the required evidence test applicable under OCGA § 16-1-6 (1) or under the statutory definition for included offense found in OCGA § 16-1-6 (2). Consequently, the trial court committed no error in sentencing Epperson for both offenses.

(b) We next address Epperson's contention that his aggravated battery conviction should have been merged into his aggravated assault conviction under the reasoning of the *Regent* case. *Regent* arguably supports the merger of Epperson's

19

aggravated battery and aggravated assault convictions under OCGA § 16-1-6 (2), see *Regent*, 299 Ga. at 176, but the merger of those crimes would not change the sentencing in this case. If those two convictions merged, Epperson's aggravated assault conviction would be the included offense and thus would be *merged into* his aggravated battery conviction. See *Regent*, 299 Ga. at 176 (concluding that, as charged, the aggravated assault was "included in" the aggravated battery for sentencing); *Emberson v. State*, 271 Ga. App. 773, 775 (1) (611 SE2d 83) (2005) ("Since the trial court merged the convictions for sentencing but did not specify which conviction merged into the other, the trial court is directed on remand to specify that the aggravated assault merged into the aggravated battery and that the sentence imposed was for the offense of aggravated battery."); *Mills v. State*, 187 Ga. App. 79, 80-81 (4) (369 SE2d 283) (1988) (because aggravated assault should have been merged into aggravated battery, defendant should only have been sentenced for aggravated battery).

Here, as previously noted, the trial court merged Epperson's aggravated assault conviction into his armed robbery conviction, and then sentenced Epperson for armed robbery and aggravated battery. Thus, even if the trial court should have merged Epperson's aggravated battery and aggravated assault convictions, the end result

would have been the same – Epperson would have been sentenced for aggravated battery rather than aggravated assault, given that the aggravated assault would constitute the included offense. See *Regent*, 299 Ga. at 176; *Emberson*, 271 Ga. App. at 775 (1); *Mills*, 187 Ga. App. at 80-81 (4). Consequently, any error by the trial court in failing to merge Epperson's aggravated battery and aggravated assault convictions was harmless and provides no basis for vacating his sentence.

*Judgment affirmed. Boggs and Rickman, JJ., concur*.