## A93A0541. PURVIS v. THE STATE.
### (433 SE2d 58)

POPE, Chief Judge.

Defendant Carol Purvis, Ph.D., was employed as Superintendent of the Clarke County School District. In 1991 the authorities discovered that certain funds belonging to the school system had been diverted by two assistant superintendents, John M. Benton and Bernie L. Stills, to what amounted to a "slush fund" which was used, in part, for entertainment and other unauthorized expenditures. Dr. Purvis was the beneficiary of some of these expenditures. Accordingly, Benton, Stills and Dr. Purvis were indicted for violating the Georgia RICO Act, OCGA § 16-14-1 et seq.[1] The indictment alleged 25 separate predicate acts as the basis for the RICO charge. Benton and Stills pled guilty and Dr. Purvis pled not guilty. He was tried and convicted, the jury expressly finding him guilty of three of the alleged predicate acts. Dr. Purvis ("defendant") appeals.

Among the funds diverted by Benton and Stills were two checks totalling $45,000 made payable to the school district. Theft by taking as a result of the unlawful appropriation of these two checks constituted two of the predicate acts the jury found defendant guilty of committing. Defendant argues the trial court erred in denying his motion for directed verdict as to these two predicate acts because insufficient evidence was presented from which the jury could find him guilty of these two acts. We agree.

The evidence shows the two checks were diverted into the slush fund account in August 1989. No evidence was presented that the defendant knew of the diversion until after that date when, in October or November 1989, Benton and Stills admitted the diversion to defendant after a school district employee discovered the diversion and confronted Benton with the discovery. Benton testified that he and Stills wanted to admit the offense to defendant before defendant oth-

---

[1] Also indicted was Chester R. Strader, a certified public accountant who assisted Benton and Stills. With Benton and Stills, Strader pled guilty to the charge.

erwise learned of it. The evidence shows defendant did not report the diversion to the school board or any law enforcement officer but allowed Benton and Stills the opportunity to replace the diverted funds.

Evidence was also presented from which the jury could conclude that defendant colluded with Benton and Stills on a scheme to return the funds by diverting other funds from the sale of school district computer equipment. Evidence was presented that ultimately, however, defendant did not approve the sale of the computer equipment. Nevertheless, Stills followed through on the plan and entered into a contract to sell the computer equipment, diverted $91,000 from that sale and used the money, in part, to repay the $45,000 diverted earlier. The diversion of the $91,000 was alleged as one of the predicate acts in the RICO indictment. The jury, however, did not find defendant guilty of the act of diverting the $91,000 from the sale of the computer.

Defendant admitted that he committed the third predicate act of which the jury found him guilty: wrongfully signing a disclosure letter attesting to the accuracy of financial records and other information supplied to an independent accounting firm for the annual audit of the school district. At the time he signed this letter, defendant knew of the diversion of $45,000 of school district funds. The fraudulent misrepresentation in the disclosure letter is certainly evidence from which a jury could find defendant guilty of concealing evidence of a crime, a violation of OCGA § 16-10-50. However, neither the wrongful signing of the disclosure letter nor the evidence of collusion with Benton and Stills to cover up the crime after it was committed constitutes evidence that defendant was a party or aider or abettor of the diversion of funds.

"One guilty of violating [OCGA § 16-10-50] would be classified as an 'accomplice after the fact' at common law, and such an offender is not considered . . . a 'party to the crime' under [OCGA § 16-2-20]. [Cits.] At common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of an obstruction of justice." *Moore v. State*, 240 Ga. 210, 211-212 (240 SE2d 68) (1977). "[A]lthough the terminology of parties to a crime as principals in the first and second degree has been abolished, the concept, as related to criminal responsibility, remains constant. 'Aid or abet' as used [in OCGA § 16-2-20 (b) (3)] should be given the same meaning as in former Code § 26-501 defining a principal in the second degree as one 'who is present, aiding and abetting the act to be done.' " *Hannah v. State*, 125 Ga. App. 596, 598 (188 SE2d 401) (1972). In essence, to be guilty as a party to a crime as an aider or abettor pursuant to OCGA § 16-2-20 (b) (3), a defendant must be an

accessory before the fact. In this case, no evidence was presented that defendant was an accessory to the commission of the crime of theft by taking the $45,000 in school district funds.

Neither was evidence presented to support the theory that defendant acted as a conspirator in the commission of the crime. An accessory after the fact cannot be an accomplice in the crime. *Schmid v. State*, 77 Ga. App. 623 (49 SE2d 134) (1948). "There can be no conspiracies under our law between the perpetrators of a major offense and an accessory after the fact." Id. at (4).

We note that evidence was presented that before Benton and Stills confessed to defendant about the stolen funds, defendant questioned them concerning the source of the funds which were being used for entertainment and other expenses which did not qualify for reimbursement from school district funds. Defendant was told "you don't want to know" and defendant agreed that he should remain ignorant. Defendant also admitted at trial that in his official capacity as school district superintendent it was his responsibility to manage school district funds. Defendant's intentional act of remaining ignorant of the source of funds which were spent in a questionable manner could arguably be considered evidence of defendant's criminal negligence in the execution of his public duty. The State, however, did not request that the jury be instructed on criminal negligence and no such charge was given. Moreover, even if defendant was criminally negligent in intentionally remaining ignorant of the source of the funds, no evidence was presented that this negligence resulted in his knowledge of or participation in theft of the funds from the school district. Evidence was presented, for example, that defendant asked Benton to resign his position as assistant school superintendent after it was learned that he had permitted a company which conducted business with the school district to host a party in his honor. Thus, while evidence was presented that defendant knew or should have known that the source of funds was improper or illegal, no evidence was presented that before Benton and Stills confessed to theft of funds, defendant had knowledge that the source of the funds was theft as opposed to some other source such as illegal kickbacks or contributions from third parties.

Defendant admits the evidence may have been sufficient to show he was guilty of the act of theft by receiving stolen property. The evidence showed defendant was the beneficiary of much of the entertainment expenditures made from the fund and, although the evidence was conflicting, evidence was presented from which the jury could find that defendant continued to reap benefits from the slush fund after he was informed of the illegal source of that fund. Theft by receiving stolen property, however, is a separate offense from theft by taking. *Sosbee v. State*, 155 Ga. App. 196 (270 SE2d 367) (1980).

"They are two completely different crimes, having different elements, and are, in fact, so mutually exclusive that the thief and the receiver cannot even be accomplices." Id. at 197.

Having admitted he signed the false disclosure letter to the auditors, defendant could obviously be found guilty of OCGA § 16-10-20, which prohibits the making of "any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of . . . the government of any county, city, or other political subdivision of this state. . . ." The indictment, however, did not charge defendant with a separate offense for violation of OCGA § 16-10-20 but only alleged the violation as a predicate act to the single RICO count. The evidence is sufficient only to sustain the jury's finding that defendant committed this one predicate act alleged in the indictment. To be guilty of a "pattern of racketeering activity" pursuant to OCGA § 16-14-4 (b), however, a defendant must have engaged in "at least two incidents of racketeering activity. . . ." OCGA § 16-14-3 (8). Because we conclude the evidence was insufficient to sustain a conviction for the single RICO count of which defendant was charged, we must reverse defendant's conviction.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED APRIL 30, 1993 —
RECONSIDERATION DENIED MAY 18, 1993 ▮

*L. Scott McLarty, Robert J. Motyka, Bruce S. Harvey,* for appellant.

*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney,* for appellee.