## A03A0276. JAMES v. THE STATE.
### (579 SE2d 750)

ELLINGTON, Judge.

A Ware County jury found Bobby Joseph James guilty of several offenses arising out of a home invasion.[1] The crimes were committed by Anthony Maxwell and Royal Holmes, and James was convicted as a party to the crimes under OCGA § 16-2-20. James appeals from the judgment of conviction. Because the evidence adduced was insufficient to establish that James acted as a conspirator or as a party to the crimes, we must reverse.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

During the evening of June 6, 2001, Maxwell and Holmes entered the Ware County home of Mr. and Mrs. O. C. Dell without permission. Armed with a sawed-off shotgun, Maxwell crept up behind Mr. Dell, who was sleeping in a recliner, and grabbed him by the throat. Maxwell demanded money from Mr. Dell's safe. Mr. Dell said there was no safe, and Maxwell struck him in the head with the butt of his shotgun, injuring him severely. Mrs. Dell, who had been taking a bath, heard the commotion and ran to her husband's aid. Holmes directed Mrs. Dell to her bedroom, forced her to lie down, and bound her hands with cloth and duct tape. Maxwell dragged Mr. Dell to the back bedroom and placed him next to Mrs. Dell. Maxwell and Holmes took cash from the victims, removed jewelry and guns from the house, and then drove away in the Dells' car.

The evidence against Holmes and Maxwell was overwhelming. Mrs. Dell recognized Holmes as one of the assailants because Holmes had rented cars from her through the Dells' car rental business. In fact, Holmes owed the Dells over $700 in rental fees. A witness saw

---

[1] James was convicted of burglary, OCGA § 16-7-1; aggravated assault, OCGA § 16-5-21; kidnapping, OCGA § 16-5-40; armed robbery, OCGA § 16-8-41; possession of a firearm during the commission of a felony, OCGA § 16-11-106; and motor vehicle theft, OCGA § 16-8-2.

Maxwell and Holmes walking down the street toward the Dells' home shortly before the robbery. Holmes' fingerprint was found on the duct tape used to bind Mrs. Dell. And Holmes testified at length as to his and Maxwell's involvement. On the other hand, the State adduced no evidence suggesting that James was present during the commission of the crimes. Instead, the State attempted to prove that James, as the leader of a gang to which Maxwell and Holmes belonged, orchestrated the crimes.

The State presented evidence establishing that James was the leader of a gang called "Stixx" which operated out of Offerman, Georgia. Stixx members have distinctive tattoos they earn by committing an act of violence. James and Maxwell had the Stixx tattoo. Although Holmes had no tattoo, he was a member of James' organization. Also, Holmes lived in the same house with James and another gang member, Omar Lambert. Lambert testified that he and Maxwell did whatever James asked them to do. Holmes and Lambert rented cars for James and drove him around.

A few days before the robbery, Holmes, Lambert, Maxwell, and James drove by the Dell home. James pointed to the Dell home and commented that the Dells had a safe with about $100,000 in it and that it would be "an easy lick to get." Holmes mentioned robbing the Dells, stating that Mr. Dell had a lot of money in his pockets. James responded, saying something to the effect of "forget it," "don't worry about it," or "don't do it." Holmes testified that they did not form any plan that day to rob the Dells. In fact, Holmes testified that he had no intent to rob the Dells until the day of the robbery when Maxwell sought him out. Holmes never testified that he committed the robbery as a rite of initiation into the Stixx gang or that either he or Maxwell was acting at James' direction.

After the robbery, Holmes and Maxwell disposed of the Dells' car. Holmes kept the $100 he stole from Mrs. Dell; Maxwell kept everything else. There is no evidence the State recovered the remaining robbery proceeds. After disposing of the car and running several errands, Maxwell and Holmes went to Oak Street, where several people were hanging out, drinking and smoking, including James. Holmes did not meet James after the robbery. From a nearby pub, Holmes hailed a cab to take him back to his and James' home in Offerman. When he returned home, Holmes asked James' father and another person for help in leaving town. Shortly thereafter, James and Lambert returned home. Holmes started to tell James about the robbery, but James had already heard about it. Lambert testified he heard Holmes tell James that he had "done messed up," to which James responded: "Don't say nothing. Hush." James said he would "take care" of Holmes and help him avoid prosecution. James, with Lambert's help, took Holmes to a motel in Jacksonville, Florida.

Lambert paid for the motel room with the $100 Holmes took from Mrs. Dell's coat pocket and gave James the change. James told Holmes not to come back to Waycross. James, however, eventually told Holmes to return to Offerman. Both Maxwell and Holmes were arrested at James' residence in Offerman.

James told Lambert that Holmes was "stupid" for not wearing a mask during the robbery. Lambert overheard James complaining to Maxwell that Holmes had "messed up" and that everything was going to "come down on us." Holmes testified that James told him to "stay strong," that is, not to talk, and that he "took care" of Maxwell's gun. However, Lambert admits that James told him to tell the truth about what happened.

1. James contends the evidence adduced is insufficient to support his conviction as a party to the crime. We agree. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). "A person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b). Mere approval of the criminal act that does not rise to encouragement is not sufficient evidence to establish that the defendant was a party to the crime. *Jordan v. State*, 272 Ga. 395 (1) (530 SE2d 192) (2000). Proof that the defendant shared a common criminal intent to commit the crime with the actual perpetrators is necessary, *Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982), and may be inferred from the defendant's conduct before, during, and after the crime. Id.; *Sands v. State*, 262 Ga. 368 (2) (418 SE2d 55) (1992). Finally, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall . . . exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. See *Baltazar v. State*, 254 Ga. App. 773, 774 (564 SE2d 202) (2002).

Given the circumstantial nature of the evidence adduced, the State was required to exclude every other reasonable hypothesis save James' guilt. In this case, James was not present during the crimes and there is no evidence he helped plan the crimes. Although James may have approved of and even rewarded criminal conduct generally, his conduct before and after the crimes at issue does not logically support an inference that he knew of Holmes and Maxwell's plan before it was executed and that he shared in their criminal intent to commit these particular crimes. See, e.g., *Brown v. State*, 250 Ga. 862, 864 (1) (302 SE2d 347) (1983), and *Moore v. State*, 255 Ga. 519, 520 (340 SE2d 888) (1986) (In both *Brown* and *Moore*, the Supreme Court reversed the appellant's murder conviction because the cir-

cumstantial evidence failed to show the requisite shared criminal intent.). Cf. *Butler v. State*, 259 Ga. App. 190 (576 SE2d 596) (2003) (jury authorized to infer shared criminal intent when defendant observed co-defendant's preparations to commit arson, was present during the crimes, and fled the scene). In this case, James' statements before the crime was committed can be construed as his disapproval of a plan to rob the Dells. That James had heard about the crime before Holmes told him about it does not exclude the possibility that he heard about it from someone else. And it is unreasonable to infer an admission of guilt from James' statement that the blame for the crimes would "come down on us" when the statement can equally be construed as a fear that he and the gang would be prosecuted for the crimes.

We have scrutinized the record and find the evidence insufficient to establish that James intentionally aided, abetted, advised, encouraged, counseled, hired, or procured Holmes and Maxwell to commit the crimes. The evidence, at most, establishes that James found out about the crimes after they were committed and did everything he could to help Holmes avoid prosecution. Whether James did this because he planned the crimes or because he wanted to protect the gang and its members remains a matter of conjecture. Given an equally reasonable explanation for James' after-the-fact involvement, we cannot say the State excluded every other reasonable hypothesis save his guilt. See, e.g., *Bullard v. State*, 263 Ga. 682, 685-686 (1) (436 SE2d 647) (1993) (participation in the crime of concealing the death of another did not make the defendant a party to the crime of murder).

Further, while James may have hindered the apprehension of a criminal and obstructed justice, his collusion with Maxwell and Holmes to cover up their crimes, given the facts adduced, is insufficient to make him a party to the underlying crimes under OCGA § 16-2-20. One guilty of such acts may be considered an "accessory after the fact" at common law, but such an offender is not a party to a crime under OCGA § 16-2-20. *Purvis v. State*, 208 Ga. App. 653, 654 (433 SE2d 58) (1993). "At common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of obstruction of justice."[2] (Citation and punctuation omitted.) Id. at 654-655. The same logic holds true to an assertion of criminal liability based on James' actions in this case under a conspiracy theory. Id. at 655.

Because the evidence adduced was legally insufficient to support

---

[2] The State did not charge James with any such offense.

James' convictions as a conspirator or as a party to the crimes, we must reverse.

2. Because we reverse James' convictions on sufficiency grounds, his remaining enumerations of error are moot.

*Judgment reversed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 25, 2003 —
RECONSIDERATION DENIED MARCH 19, 2003.

*Robert L. Crowe*, for appellant.
*Richard E. Currie, District Attorney*, for appellee.