**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 7, 2019**

# In the Court of Appeals of Georgia

A18A1436. LONON v. THE STATE.

RICKMAN, Judge.

China Lonon was tried by a jury and convicted of armed robbery, criminal attempt to commit murder, aggravated battery, three counts of aggravated assault, two counts of first degree arson, false imprisonment, theft by taking, and aggravated cruelty to animals. Lonon subsequently filed a motion for new trial and to correct sentence, alleging that the evidence was insufficient to support the jury's verdict for the offenses of armed robbery, theft by taking, and aggravated cruelty to animals; that the trial court erred in numerous respects; and that trial counsel rendered ineffective assistance. After conducting a hearing, the trial court denied Lonon's motion for new trial, but granted his motion to correct sentence and vacated the sentences for theft by taking and one count of first degree arson. On appeal, Lonon contends that the

evidence was insufficient to support his convictions for criminal attempt to commit murder, first degree arson, and aggravated cruelty to animals; that his trial counsel was ineffective; and that the trial court erred by refusing to merge aggravated assault into aggravated battery and by refusing to merge first degree arson into criminal attempt to commit murder. For reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence presented at trial showed that on the afternoon of April 22, 2016, the victim was at his home when China Lonon, Arturo Lopez, and a bald-headed man later identified as Markius Curtis showed up, asking to buy marijuana. The victim knew Lopez and had seen Lonon a few times before, but he did not know Curtis. At Lonon's request, the three men were driven to the victim's home by Cammy Jackson. Lonon did not tell Jackson why they were going to the victim's residence, and there was no discussion of it while she was driving.

When they arrived, Lonon, Curtis, and Lopez went inside the victim's residence. Curtis asked the victim about purchasing a large quantity of marijuana, and the victim told him that he could not supply it but that he might be able to call someone else about it. Shortly thereafter, Lopez left the residence.

2

While the victim was sitting on a couch in the front room, Curtis punched him, and the victim fought back. Lonon got involved, and the victim fought both men until he fell back on the couch. Curtis asked him where he kept the drugs and the money, and the victim replied that he only had money and that it was under his mattress. At that point, Lonon pulled out a machete, and he and Curtis went to get the money. While the victim was on the couch, Lonon started talking to one of the dogs living in the house, "cussing at the dog, telling the dog to come on, I wish you would, and so on and so forth."[1]

Lonon then told the victim to get up and go into the bedroom and lie down on the floor. While the victim was on the floor, Lonon and Curtis began discussing how they wanted to take the victim's Xbox, his television, and his handgun, which was in the box that it came in when he purchased it. The victim pleaded with Lonon to take the possessions and let him go, promising not to tell anyone. The victim testified that Lonon responded, "we've got to kill him," I know he's going to tell. Curtis suggested

---

[1] There were two dogs living in the house at the time, and it is unclear which dog Lonon was addressing. One of the dogs was a pit bull that belonged to the victim's roommate, and he kept the dog caged in a room in the house while he was at work.

that they just "take the stuff" and go. After discussing it briefly, Curtis said that if Lonon thought the victim was going to tell, "we got to do it then."

After the discussion ended, the victim felt the first chop from the machete Lonon was wielding. He felt at least three chops from the machete before he got up and began to fight back. He made it to the front room and started beating on the door and yelling for help, but Curtis told him to get away from the door, pretending he had a gun that was actually an Xbox controller. At that point, the victim noticed that his couch was on fire. The victim managed to get the door open and run out. As he looked back, he saw Lonon and Curtis run out his back door.

The victim testified that Lonon and Curtis took his gun and $400 cash, that his house was destroyed by the fire, and that the pit bull belonging to one of his roommates "got killed during the situation." The victim sustained blows to his hand and the back of his head and suffered nerve damage, memory loss, headaches, and nightmares.

Lopez and Jackson were still outside the residence when Lopez saw the victim come out of his house, screaming for help. Lopez told Jackson to drive, and they went back to Jackson's house, where Lopez was arrested less than two hours later. Lopez testified that he and Lonon are friends and that although he thought that Lonon was

4

going to the victim's house to buy marijuana on the date of the incident, Lonon had discussed robbing the victim twice in the past.

One of the victim's neighbors came home on the date of the incident and saw a vehicle sitting in the street with two occupants, one female and one male. He then saw someone exit the back door of the victim's house, moving at a fast pace. As he got out of his car, he saw the victim holding his head, covered in blood, and pointing to his house, saying "they're trying to kill me, they're trying to rob me." He also saw smoke billowing out the back of the house. The neighbor and his wife began assisting the victim, and their son called 911. When they asked the victim who had done this to him, all he said was "China."

An officer with the Rincon Police Department responded to the call, and when he arrived, the residence was completely engulfed in flames and the victim was sitting on the ground covered in blood. He told the officer that he was attacked by two males with a machete and that one of the males was named "China."

The Chief of Police for the Rincon Police Department responded to the call to assist in crime scene processing. He observed a blood spatter going up the steps of and into the residence, which was completely damaged, and observed an obvious area of struggle between the living room and the bedroom, which contained a pool of

5

blood on the floor and looked like it had been rummaged through. In another bedroom, he found a dead dog on the floor, outside its cage.

A detective with the Rincon Police Department was called to investigate the scene. As part of his investigation, he spoke to the patrol officers who had interviewed the neighbor and learned that the suspects had run into the fields located behind the victim's residence. The police chief informed the detective that they had picked up a gun box that matched the type of gun taken from the victim, and that the gun box was found on a trail in the woods behind the victim's residence. The detective went to the hospital shortly after the incident and spoke to the victim, who told him that "China," Lopez, and a third man with an odd-shaped head were the ones at his house and that "China" was the one who hit him.

The evidence room custodian, a sergeant with the Rincon Police Department, got involved in the investigation by sorting through the evidence that had been obtained in the case. He processed a cardboard gun box for prints and sent a portion of the box to a fingerprint expert. There was not enough detail for the expert to match the fingerprints to a specific person.

An arson specialist with the Effingham County Sheriff's Office responded to the victim's residence and met with the fire department on the scene. He determined

that the fire was caused by a human act and observed a burn pattern that was consistent with an ignitable liquid being poured on the floor.[2] The officer testified that when he saw the dead dog, it was in the middle of a bedroom floor, and that no necropsy was performed on the dog.

An acquaintance of Lonon was incarcerated with Curtis in the Effingham County Jail, and Curtis talked to him about what happened on the date of the incident. Curtis told the acquaintance that he went to the victim's house with Jackson (the acquaintance's sister-in-law), Lopez, and Lonon. While Curtis and Lonon were inside the victim's house, they asked the victim where he kept the money and the marijuana. The victim told them he had no marijuana, but had $400 in a mattress. When the victim showed Lonon where the money was located, Lonon hit him with the machete in the back of the head and the arm. Curtis then went into the living room and started setting the fire. While Lonon and the victim were fighting, Curtis grabbed a chair from the kitchen and hit the victim in the back of the head with it. After the fire was set, both men ran out the back door, down the street, and through a trail into an open area with bales of hay, where they hid.

---

[2] Although lab tests came back negative for the presence of an accelerant, the officer testified that result is common in fire investigations.

1. Lonon contends that the evidence was insufficient to support his convictions as a party to the crimes of attempted murder[3] and first degree arson.[4] He argues that the evidence showed that Curtis set the fire and that it failed to show that Lonon aided or abetted the arson or that arson was a reasonably foreseeable consequence of the plan to rob the victim.[5]

When determining whether the evidence is sufficient to support a conviction, this Court "does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary

---

[3] "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

[4] "A person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage . . . [a]ny dwelling house of another without his or her consent. . . or "[a]ny building. . . or other structure under such circumstances that it is reasonably foreseeable that human life might be endangered." OCGA § 16-7-60 (a) (1), (5).

[5] Lonon challenges his convictions on Count 3 (criminal attempt to commit murder), Count 8 (first degree arson), and Count 9 (first degree arson). At Lonon's resentencing hearing, the trial court merged Counts 8 and 9 and vacated the sentence on Count 9. Accordingly, we only address his claims with respect to Counts 3 and 8.

to make out the State's case, the appellate court must uphold the jury's verdict." *Canelas v. State*, 345 Ga. App. 497, 499 (1) (813 SE2d 170) (2018).

Count 3 of the indictment charged Lonon individually and as a party to the crime of criminal attempt to commit murder,

> in that the said accused. . . , on or about the 22nd day of April, 2016, did knowingly and intentionally attempt to commit the crime of murder, . . . in that said accused did enter the dwelling house of [the victim]. . . , armed with a machete, and did strike the said [victim] on the head multiple times with said machete, and did set fire to the house while it was occupied by [the victim], acts which constitute a substantial step toward the commission of said crime. . . .

Count 8 of the indictment charged Lonon individually and as a party to the crime of arson in the first degree "in that the said accused. . . , on or about the 22nd day of April, 2016, did knowingly damage, by means of fire, the dwelling house of [the victim]. . . , without said owner's consent. . . ."

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). "A person who does not directly commit a crime may nevertheless be convicted as a party to that crime upon proof that he or she intentionally aided or abetted the commission of the crime, or intentionally advised, encouraged, hired, counseled, or

procured another to commit the crime." *Cisneros v. State*, 299 Ga. 841, 846 (2) (792 SE2d 326) (2016); OCGA § 16-2-20 (b) (3), (4). "All of the participants in a plan to commit a crime are criminally responsible for the acts of each, committed in the execution of the plan, and which may be said to be a probable consequence of the unlawful design, even though the particular act may not have actually been a part of the plan." (Citation and punctuation omitted.) *Cisneros*, 299 Ga. at 846-847 (2); see also *Menzies v. State*, 304 Ga. 156, 160 (II) (816 SE2d 638) (2018) ("[W]hen a group of individuals join together to plan and commit a crime, each member of the criminal plot is responsible for the acts of the others – regardless of whether a particular act was part of the original plan – as long as such acts were "naturally or necessarily done" in the execution or furtherance of the common purpose."). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) *Harper v. State*, 298 Ga. 158, 160 (780 SE2d 308) (2015).

Relying on *James v. State*, 260 Ga. App. 350 (579 SE2d 750) (2003), Lonon argues that the evidence failed to show a common intent to set fire to the victim's residence and, at best, showed only that Lonon merely approved of Curtis's act of setting fire to the residence. *James*, however, is distinguishable because James was

10

not present at the crimes, there was no evidence that he helped plan the crimes, and the evidence presented only established that James found out about the crimes after they were committed and did everything he could to help one of the perpetrators avoid prosecution. Id. at 352-353 (1).

Here, however, Lonon was with Curtis before, during, and after the crimes. Evidence was presented that Lonon and Curtis intended to rob the victim and then kill him to avoid detection. When Lonon stated that they needed to kill the victim, Curtis was initially reluctant until Lonon convinced him that they had to kill the victim so that he would not report them. Hitting the victim with the machete and setting fire to his residence were both acts that the jury could infer were done in the execution or furtherance of the common purpose – to rob the victim and then silence him permanently. Accordingly, the evidence authorized the jury to find Lonon guilty as a party to the crimes of attempted murder and first degree arson, as charged in Counts 3 and 8 of the indictment.

2. Lonon contends that the evidence was insufficient to support his conviction for aggravated cruelty to animals.[6] He argues that there is no evidence that he set fire

_____

[6] "A person commits the offense of aggravated cruelty to animals when he or she . . . [m]aliciously causes the death of an animal." OCGA § 16-12-4 (d) (1).

to the residence or that he knew the pit bull was in the residence and that the circumstantial evidence failed to prove that the fire proximately caused the dog's death.

(a) With respect to Lonon's contention that he did not set the fire and that he was not a party to the arson, as set forth in Division 1, the jury was authorized to conclude that Lonon was a party to the crime of first degree arson. See *Cisneros*, 299 Ga. at 846-847 (2).

(b) Lonon contends that the evidence did not show that he caused the death of the dog maliciously. The aggravated cruelty to animals statute defines "malice" as "(A) [a]n actual intent, which may be shown by the circumstances connected to the act, to cause the particular harm produced without justification or excuse; or (B) [t]he wanton and willful doing of an act with an awareness of a plain and strong likelihood that a particular harm may result." OCGA § 16-12-4 (a) (2). Lonon argues that he lacked knowledge that the pit bull was present and therefore malice could not be shown.

Evidence was presented that there were two dogs living in the residence at the time and that Lonon spoke to one of them during the attack on the victim. Thus, Lonon was aware of the presence of at least one dog, and the jury was authorized to

conclude that, as a party to the crime of arson, Lonon was aware of the strong likelihood that a dog inside the residence could be killed by the fire. See *Harden v. State*, 164 Ga. App. 59, 60 (2) (296 SE2d 372) (1982) (whether action was taken maliciously was a question for the jury). The dog killed did not have to be the intended target of the fire. See *Fort v. State*, 274 Ga. 518, 519 (1) (558 SE2d 1) (2001); see generally *Cash v. State*, 297 Ga. 859, 860-861 (1) (778 SE2d 785) (2015) (although appellant contended that he did not know that victim would be present or that his accomplice would shoot her, evidence was sufficient for the jury to find beyond a reasonable doubt that appellant was a party to the aggravated assault of victim under doctrine of transferred intent); *Blackwell v. State*, 302 Ga. 820, 821-822 (1) (809 SE2d 727) (2018); *Dunn v. State*, 242 Ga. App. 525, 528 (2) (530 SE2d 236) (2000).

(c) Lonon also contends that, without a necropsy, the circumstantial evidence failed to prove that the fire proximately caused the dog's death. He posits that the dog could have died from malnutrition prior to the fire because there was evidence that the dog stayed in a cage in a bedroom while her owner was at work from approximately 2:00 pm to 11:00 pm, and that the victim sometimes took the dog out for walks and fed her while his roommate was at work, but did not do so every day.

13

The offense of aggravated cruelty to animals may be proven by circumstantial evidence. See *Favors v. State*, 326 Ga. App. 373, 375 (1) (756 SE2d 612) (2014); *Futch v. State*, 314 Ga. App. 294, 296 (1) (723 SE2d 714) (2012). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "The jury decides questions concerning the reasonableness of hypotheses, and where the jury is authorized to find that the evidence was sufficient to exclude every reasonable hypothesis except that of guilt, we will not disturb that finding unless the verdict of guilty is insupportable as a matter of law." *Futch*, 314 Ga. App. at 296 (1).

There were two dogs in the victim's residence at the time of the fire, and one of them was confined inside a bedroom. When the fire department entered the residence to fight the fire, all of the doors were closed except for the back door to the residence. After the fire, a dead dog was found on the floor of the back bedroom, and the victim testified that his roommate's dog "got killed during the situation."

Based upon the evidence, the jury was not required to find that the hypothesis that the dog had already died from malnutrition before the fire began was a reasonable one. See *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015)

14

("Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable."). We conclude that the evidence presented was sufficient to authorize a rational jury to find that the State had excluded every reasonable hypothesis except that of Lonon's guilt as a party to the crime of aggravated cruelty to animals.

3. Lonon contends that his trial counsel was ineffective in several respects. He argues that his trial counsel failed to object to inadmissible hearsay, failed to object to the jury instruction on aggravated battery, and failed to move to quash Count 3 as duplicitous.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). To prove that the performance of his trial counsel was deficient, Lonon must show that he performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). To prove that he was prejudiced by the performance of his trial counsel, Lonon "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

15

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B).

(a) Lonon contends that his trial counsel performed deficiently when he failed to object to testimony from the detective about what other officers had told him about the location of the gun box, arguing that the testimony constituted inadmissible hearsay because the detective did not locate the gun box and was not present when it was located. Pretermitting whether trial counsel was deficient in failing to object to the detective's testimony, we conclude that Lonon has failed to show the requisite prejudice. See *Ramirez v. State*, 345 Ga. App. 611, 618 (3) (814 SE2d 751) (2018) (if defendant fails to meet his burden on one prong of the two-prong *Strickland* test, this court need not review the other prong).

To show prejudice, Lonon asserts that the detective's testimony regarding the location of the gun box was the only evidence to support the taking element of the armed robbery and theft by taking counts and that, without that testimony, a reasonable jury could have found that the gun was not taken, but instead destroyed in the fire. The victim testified that on the day of the incident, his gun was in the gun box he received when he purchased it, that the gun box was inside his residence, that Lonon and Curtis discussed the fact that they were going to take the gun, and that

16

they took the gun. After the victim's residence was destroyed by fire, a cardboard gun box for the exact same type of gun was recovered as evidence in this case. The evidence does not support a finding that the box could have been found inside the residence after the fire because the victim testified that his house was destroyed and that although he had his head down and did not see Lonon and Curtis take the gun, when he got up to defend himself, the property he claims was taken was no longer there. And it would not be reasonable to conclude that someone took the gun box, but left the gun inside the residence, where it was destroyed by the fire. Because Lonon has not shown that there is a reasonable probability that, but for the detective's testimony about where the gun box was found, the result of the proceeding would have been different, he has failed to satisfy the prejudice prong of the *Strickland* test. See *Miller v. State*, 300 Ga. App. 652, 655 (686 SE2d 302) (2009) (prejudice prong not satisfied where omission of hearsay statement would not have resulted in the jury believing that appellant was innocent).

(b) Lonon contends that his trial counsel performed deficiently in failing to object to the jury instruction on aggravated battery. He argues that the instruction constructively amended Count 4 of the indictment.

17

Count 4 of the indictment charged Lonon with aggravated battery, alleging that "on or about the 22nd day of April, 2016, [he] did maliciously cause bodily harm to [the victim], by seriously disfiguring said person's body by striking the [victim] multiple times on his head and his left arm with a machete. . . ." The jury was instructed that "a person commits the offense of aggravated battery when he maliciously causes bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof."

"Where the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods *with no limiting instruction*." (Citation and punctuation omitted; emphasis in original.) *Boccia v. State*, 335 Ga. App. 687, 694 (2) (782 SE2d 792) (2016). This "defect is cured, however, where the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Id.; see also *Walls v. State*, 283 Ga. App. 560, 562 (3) (642 SE2d 195) (2007).

18

Here, the trial court read the indictment to the jury and further instructed them that "[t]he burden of proof rests upon the State to prove every material allegation in the indictment and every essential element of each crime charged in the indictment. . . beyond a reasonable doubt." The jury was also instructed to make a separate finding as to each defendant with regard to each individual charge in the indictment and was given a copy of the indictment during deliberations. Because the charge, when considered as a whole, fairly instructed the jurors that they could convict Lonon only of the specific offense with which he was charged in the indictment, we find no reversible error. See *Walls*, 283 Ga. App. at 562-563 (3); *Dumas v. State*, 283 Ga. App. 279, 282 (4) (641 SE2d 271) (2007). As a result, trial counsel was not deficient in failing to object to the instruction on aggravated battery. See *Ray v. State*, 345 Ga. App. 522, 525 (3) (b) (812 SE2d 97) (2018).

(c) Lonon contends that his trial counsel was ineffective because he did not move to quash Count 3 of the indictment as duplicitous.

Lonon's appellate counsel filed an amended motion for new trial and a second amended motion for new trial, both of which alleged that trial counsel was ineffective. But the specific issue of trial counsel's failure to file a motion to quash Count 3 of the indictment was never raised in either amended motion for new trial or

19

at the hearing on those motions. As a result, Lonon has waived this argument. See *Serdula v. State*, 344 Ga. App. 587, 592-593 (3) (a) (812 SE2d 6) (2018); *Debaeke v. State*, 270 Ga. App. 169, 170 (1) (605 SE2d 882) (2004); *Moon v. State*, 252 Ga. App. 796, 799 (2) (e) (557 SE2d 442) (2001).

4. Lonon contends that the trial court erred in failing to merge Count 7 (Aggravated Assault) into Count 4 (Aggravated Battery). The State concedes that those counts should have been merged for sentencing.

When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime, but may not be convicted of more than one crime if one crime is included in the other. OCGA § 16-1-7. One crime is included in the other when:

> (1) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or

> (2) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

OCGA § 16-1-6.

Relying on *Regent v. State*, 299 Ga. 172, 176 (787 SE2d 217) (2016), Lonon argues that the aggravated assault charge in Count 7 should be merged into the aggravated battery charge in Count 4 under OCGA § 16-1-6 (2). Count 7 charged Lonon with aggravated assault on the victim "by striking the [victim] with a deadly weapon, to wit: a machete, by striking the [victim] multiple times with said machete." And as previously noted, Count 4 charged Lonon with aggravated battery by maliciously causing bodily harm to the victim "by seriously disfiguring said person's body by striking the [victim] multiple times on his head and left arm with a machete."

In *Regent*, the offenses of aggravated battery and aggravated assault were based on the single criminal act of the appellant cutting the victim's throat with a knife, and only differed with respect to the seriousness of the injury or risk of injury suffered by the victim. *Regent*, 299 Ga. at 176. As a result, the court held that, as charged, aggravated assault was included in aggravated battery, and the two offenses should have merged. Id.

Although *Regent* arguably supports the merger of Lonon's convictions for aggravated battery and aggravated assault (Count 7), the merger of those crimes would not change the sentencing in this case. The trial court merged Count 7 into Count 3 (criminal attempt to commit murder) and sentenced Lonon for his

21

convictions of criminal attempt to commit murder and aggravated battery, among others. Lonon was not sentenced on aggravated assault. "Thus, even if the trial court should have merged [the challenged] aggravated battery and aggravated assault convictions, the end result would have been the same – [Lonon] would have been sentenced for aggravated battery rather than aggravated assault. . . ." *Epperson v. State*, 340 Ga. App. 25, 36 (3) (b) (796 SE2d 1) (2016). "Consequently, any error by the trial court in failing to merge [Lonon]'s aggravated battery and aggravated assault convictions was harmless and provides no basis for vacating his sentence." Id.

5. Lonon contends that the trial court erred in failing to merge Count 9 (first degree arson) into Count 3 (criminal attempt to commit murder). He argues that they should merge under OCGA § 16-1-6 (2), and he seeks resentencing.

As previously noted, the trial court vacated the sentence on Count 9 when it merged the two arson convictions. Although Lonon argues that the trial court should have merged the first count of arson (Count 8) into Count 9, the trial court's actions are supported by authority of the Supreme Court of Georgia. See *Stinski v. State*, 286 Ga. 839, 841 (1) (691 SE2d 854) (2010) (where appellant was convicted of two counts of first degree arson for burning one house, trial court was directed to vacate the sentence it imposed on the second count of arson in the first degree); *O'Kelley v.*

22

*State*, 284 Ga. 758, 760-761 (1) (670 SE2d 388) (2008). Thus, even if merger was required, merging Count 9 into Count 3 would not alter the sentencing in this case because no sentence is currently imposed on Count 9. Accordingly, "any error by the trial court in failing to merge [Lonon]'s [challenged arson and attempted murder] convictions was harmless and provides no basis for vacating his sentence." *Epperson*, 340 Ga. App. at 36 (3) (b).

*Judgment affirmed. McFadden, P. J., and Markle, J., concur*.